Argued August 23, affirmed September 26, reconsideration denied
November 2, 1977, petition for review allowed March 14, 1978

BRENNEN, *Appellant,*
*v.*
CITY OF EUGENE et al, *Respondents.*
(No. 76-0235, CA 7874)
569 P2d 1083

Edward P. Thompson, Eugene, argued the cause for appellant. With him on the briefs was Young, Horn, Cass & Scott, Eugene.

Gary G. Williams, Eugene, argued the cause for respondents. With him on the brief were Richard A. Roseta and Jaqua & Wheatley, P.C., Eugene.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

TANZER, J.

**TANZER, J.**

The issue in this civil case is whether plaintiff has stated a cause of action against the City of Eugene. Plaintiff appeals from a judgment on the pleadings entered by the circuit court after it sustained defense motions to strike both counts of plaintiff's second amended complaint and plaintiff refused to plead further.

Plaintiff alleged the following facts which, for purposes of this appeal, we assume to be true. The Eugene Municipal Code requires any taxicab operator to obtain a license before doing business within the city limits. The code also requires an applicant for such a license to submit a certificate evidencing public liability insurance coverage of not less than $100,000 per person.[1]

---

[1] Plaintiff pleaded Eugene Municipal Code §§ 3.010, 3.025, 3.050 and 3.065, which provide in pertinent part:

"3.010 Licenses Required. No person shall engage in an activity or operate a device listed in Column A of the following table without first obtaining a license therefor from the finance officer as provided in this chapter.

| Column A<br>Licensed Business | [Columns<br>B-E<br>omitted] | Column F<br>Liability<br>Insurance |
|---|---|---|
| Taxicab Operator . . . . . . . | | . . . . . . Yes" |

"3.025 Liability Insurance Required. Applicants for licenses for which public liability insurance is required according to Column F, section 3.010, shall submit certificates of insurance, with a 30-day notice of cancellation clause, to the finance officer prior to the issuance of the license. Public liability insurance shall include limits of coverage of not less than $100,000 per person for bodily injury, $300,000 per occurrence for bodily injury, and $50,000 per occurrence for property damage, and shall be extended to cover completed operations."

"3.050 Application Review. The finance officer shall refer each application to any persons, departments or agencies designated by this Code or the city manager to review it. In reviewing the qualifications of an applicant, the following shall be considered when appropriate:

(a) Conformity of the proposed activity or device to this Code and to state and federal law.

[ 1095 ]

Terminal Taxi Service applied for a taxicab license and submitted a certificate of public liability insurance showing only $10,000 per person in insurance coverage. On or about July 1, 1972, the defendant city issued a business license to Terminal Taxi Service.

Four months later, plaintiff, while a paying passenger in a taxicab operated by Terminal Taxi Service, was injured when the taxicab collided with another automobile. Plaintiff recovered a judgment against the taxi service and its driver for $41,719.62. The taxi service's insurer has paid its policy limit of $10,000 to plaintiff. The taxi service and its driver have less than $4,500 of net leviable assets.

Plaintiff seeks to recover from the city the difference between the unsatisfied amount of his judgment and the leviable assets of the taxi service and its driver. The first count of plaintiff's second amended complaint alleged that the city was strictly liable for this amount because it licensed Terminal Taxi Service in contravention of the insurance provisions of its licensing ordinances. The second count alleged that the city was negligent in licensing Terminal Taxi Service. Both counts are predicated upon plaintiff's theory that, by virtue of its licensing ordinances, the city owed a duty to all prospective holders of judgments for negligence against licensed taxicab com-

---

(b) Applicant's ability to perform a licensed activity which requires special knowledge or skill.

(c) Financial responsibility of applicant to protect against losses to members of the public resulting from the licensed activity.

(d) Unreasonable dangers to public health, safety or property which may result from the proposed activity or device.

(e) Past violations of laws or ordinances.

(f) Other considerations specifically required by this chapter."

"3.065 Denial of Application. If, on the basis of the application review under section 3.050, the finance officer determines that the applicant does not qualify for issuance of a license, the finance officer shall notify the applicant in writing that the application has been denied. The notice shall state the reason for denial and inform the applicant of the provisions of this Code providing for appeal to the council."

panies, to assure that such companies maintain the required minimum amount of liability insurance. Plaintiff contends that the city's breach of this duty was the proximate cause of his inability to recover fully on his judgment against the Terminal Taxi Service.

■ Plaintiff may recover only if the city owed him a duty which it violated, regardless of whether plaintiff's theory is negligence or strict liability. *Klerk v. Tektronix, Inc.,* 244 Or 10, 415 P2d 510 (1966). Therefore the basic inquiry of this case is: What is the nature of the duty to an individual, if any, assumed by a municipal corporation which adopts a regulatory ordinance controlling its own conduct?

■ Oregon law provides no direct answer. Numerous cases from other jurisdictions hold that such ordinances create a duty only to the public at large, the breach of which provides no basis for an individual's suit for damages. *See,* e.g., *Gerneth v. City of Detroit,* 465 F2d 784 (6th Cir) *cert den* 409 US 1109 (1972); *Duran v. City of Tucson,* 20 Ariz App 22, 509 P2d 1059 *rev den* (1973); *Leger v. Kelley,* 142 Conn 585, 116 A2d 429 (1955); *Stigler v. City of Chicago,* 48 Ill 2d 20, 268 NE2d 26 (1971); *Chambers v. Palaggi,* 88 Ill App 2d 221, 232 NE2d 69 (1967); *Georges v. Tudor,* 16 Wash App 407, 556 P2d 564 (1976). There is little logic in the "public duty" analysis which holds that a duty to the general public is not also a duty to the individual members of the public. Ordinarily, a duty is owed to a class of "foreseeable plaintiffs" which has identifiable limits. Thus, for example, the duty to obey a stop sign at a busy intersection is owed to those persons who may be in the immediate vicinity of that intersection at the time. *See* Prosser, Law of Torts, 254 (4th ed 1971). Where a governmental body enacts legislation for the benefit of the general public, the "duty" which it thereby assumes is, by definition, for the benefit of everyone who may be affected by it. Every member of the public is therefore a foreseeable plaintiff and the distinction between public and private duty cannot be

[ 1097 ]

logically or arithmetically drawn. Rather, the cases seem to define the universe of protected persons by resort to considerations of public policy. The tacit underlying principle is that enactment of legislation for the public welfare should not be discouraged by subjecting the governmental body which enacts it to almost unlimited liability. *See, Stigler v. City of Chicago, supra.*

We need not here adopt the "public duty" analysis which founds cases from elsewhere. The result of traditional tort analysis of the facts in this case, however, is harmonious with the prevailing public policy. If the city owes a duty to each member of the public, it arises not from the city's dangerous conduct, but from its gratuitous effort to safeguard the public interest against the dangerous conduct of others. The city has no legal obligation to license taxicabs or to condition issuance of a license upon proof of financial responsibility. Having undertaken to do so, the city is in the position of a person who acts where there is no duty to do so.

■■ The person who voluntarily undertakes to aid another, absent a duty to do so, assumes only a duty to avoid making the situation worse than it was prior to his undertaking. He does not become legally bound to successfully complete the rescue, *see* Prosser, Law of Torts, 343 (4th ed 1971), but only to avoid causing harm by his attempt. One who negligently attempts to protect a person from harm caused by another is liable only for the harm caused by the attempt itself; the attempt to prevent harm does not convert the actor into an insurer against harm from the acts of the other.

■ Similarly, the city, by undertaking to regulate the taxi industry and to require minimum liability insurance coverage, assumed the duty in doing so to avoid causing harm to any member of the public. However, it did not thereby become obligated to itself insure each

member of the public against injury caused by insufficiently insured taxicab operators.

For plaintiff to state a cause of action against the city, questions of sovereign immunity aside, he must allege that, in some way, the city's improper licensing of the Terminal Taxi Service placed him in a worse position than he would have been in had the city not acted to require licenses at all, *i.e.,* that there was harm to plaintiff arising directly by virtue of the city's action. This usually takes the form of an allegation of reasonable reliance or of inhibition of protective acts by others. Absent such an allegation, the city's error did not itself cause injury to plaintiff; it merely rendered ineffective the city's voluntary effort to aid and protect him. We hold, therefore, that plaintiff has failed to allege facts indicating that the city breached the duty owed to plaintiff to cause him no harm and thus no cause of action was stated. *Klerk v. Tektronix, Inc., supra.*

Because we conclude that the city is not liable to the plaintiff, we need not consider whether it is immune under the Tort Claims Act, ORS 30.260 to 30.300.

Affirmed.

**RICHARDSON, J.,** concurring.

The demurrer can be sustained on either the grounds set forth in the lead opinion or in the specially concurring opinion; they do not pose inconsistent positions. I agree with the reasoning of both opinions and concur in the result.

**SCHWAB, C. J.,** specially concurring.

It can be inferred from the majority opinion that if government undertakes to legislate for the public good by enacting licensing laws, building and safety codes and the like, it will be liable in many cases for injury resulting from government's failure to achieve 100 percent success in enforcing that legislation. Such

legislation and enforcement of that legislation are inextricably bound together by the singleness of the goal—the achievement of public good. I would resolve the issue in this case by reaching the question of immunity under the Tort Claims Act. If the decision to legislate in the public good is discretionary, and thus beyond the power of the courts to mandate through the device of making government liable in tort for failure to do so, it should be beyond the power of the courts to mandate enforcement of public-good legislation by making government liable for failing to do so. To put it another way, government is immune from tort liability except to the extent it elects not to be. Albeit in a manner difficult to interpret, Oregon has stated the extent to which it has waived governmental immunity in the Tort Claims Act. In *Smith v. Cooper,* 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970), the Supreme Court, dealing with the question of discretionary (therefore immunity) versus ministerial (therefore liability), stated:

"The most decisive factor but one most difficult to articulate is that it is essential for efficient government that certain decisions of the executive or legislative branches of the government should not be reviewed by a court or jury. The reason behind such factor is that the bases for the legislative or executive decision can cover the whole spectrum of the ingredients for governmental decisions such as the availability of funds, public acceptance, order of priority, etc." 256 Or at 506.

In *Jones v. Chehalem Park & Rec. Dist.,* 28 Or App 711, 716, 560 P2d 686, Sup Ct *review denied* (1977), we concluded that "* * * matters requiring substantial expenditures of public funds and the weighing of significant public priorities * * * [are] wholly within the discretion of the public body to decide."

As the majority recognizes, the great weight of authority in the United States is that the failure to enforce licensing and regulatory legislation does not create liability on the part of government to individuals injured as the result of the failure of third parties to comply with such legislation. These holdings are

commonly cast not in terms of immunity based upon the discretionary-versus-ministerial test, but in terms of duty only to the public at large and not to a particular member of the public. My difficulty with these cases is not with their logic, but with their terminology. Their rationale, where it is expressed, is just as logical as *Smith v. Cooper, supra*—in fact, it is essentially identical.

In *Stigler v. City of Chicago,* 48 Ill2d 20, 268 NE2d 26 (1971), an action was filed on behalf of a child against the city alleging that the child was injured by ingesting lead paint that had flaked off a wall in a housing project. The plaintiff contended that this happened because the city had failed to enforce its housing code. The trial court dismissed the case on motion and the Supreme Court of Illinois affirmed, holding that the ordinance did not give rise to any special duty to the plaintiff or to any person different from the public at large. In so doing, the court said:

"* * * If the failure of the city to enforce this ordinance should render it liable for injuries sustained thereby, the tremendous exposure to liability would certainly dissuade the city from enacting ordinances designed for the protection and welfare of the general public, and thereby the general public would lose the benefit of salutory legislative enactments." 48 Ill2d at 24-25.

In *Gerneth v. City of Detroit,* 465 F2d 784 (6th Cir 1972), the City of Detroit was sued for failure to properly enforce an ordinance prohibiting convicted felons from obtaining a private patrolman license. The city had issued a license to such a patrolman, failing to note that he had previously been convicted of the felony of "careless use of firearms." The plaintiff was shot by this patrolman and claimed the city was liable for failure to properly enforce the licensing provision in the ordinance. The trial judge dismissed the complaint on the ground that the undertaking by the city to license private patrolmen did not create any duty to private persons, the violation of which would justify

an action for damages for the failure to perform the duty properly. On appeal the court concluded that the city was not liable for improper enforcement of the licensing ordinance, stating:

> "It appears to this Court that the imposition of a duty to one in the position of plaintiff * * * and a resulting liability for damages for breach of such duty would impose an undue burden upon municipal corporations, and might in fact substantially interfere with the licensing and investigatory functions of such municipal corporations. It appears to us that as a matter of public policy, absent a statement to the contrary by the legislature or the highest court of jurisdiction involved, the imposition of liability for damages for breach of such a claimed duty would be inappropriate under the circumstances of a case such as this. There is no basis for a conclusion that the Detroit City Council, in enacting the ordinance in question (paraphrasing the language of Mr. Justice Cardozo) [in *Moch Co. v. Rensselaer Water Co.,* 247 NY 160, 159 NE 896, 62 ALR 1199 (1928)], 'intended to assume an obligation of indefinite extension to every member of the public . . . and the crushing burden which such an obligation might impose.' " 465 F2d at 787.

I would hold that here the City of Eugene is immune from liability under the Tort Claims Act for the reason that the decision by government as to whether it will provide complete or haphazard or no enforcement at all of licensing and regulatory legislation is discretionary in the context of tort liability.