Argued May 5, 1978, reversed and remanded February 27,
petition for rehearing denied April 17, 1979

BRENNEN, *Petitioner,*
*v.*
CITY OF EUGENE et al, *Respondents.*
(CA 7874, SC 25684)

591 P2d 719

Edward P. Thompson, of Young, Horn, Cass & Scott, Eugene, argued the cause and filed a brief for petitioner.

Gary G. Williams, of Jaqua and Wheatley, P.C., Eugene, argued the cause for respondents.

HOWELL, J.

**HOWELL, J.**

The issue in this case is whether a municipality can be held liable in damages when its employee issues a taxicab license to an applicant who does not possess the minimum liability insurance required by city ordinance. The trial court entered a judgment on the pleadings after the court sustained defendants' demurrer and motions to strike both counts of plaintiff's second amended complaint and plaintiff refused to plead further. The Court of Appeals affirmed, 30 Or App 1093, 569 P2d 1083 (1977). We granted review, 281 Or 531 (1978).

Plaintiff alleged the following facts. On or about January 4, 1972, Terminal Taxi Service (Terminal) applied to the City of Eugene for a license to operate a taxicab service. The certificate of insurance submitted by Terminal as part of its application disclosed that the company carried only $10,000 per person insurance coverage. The Eugene Municipal Code requires all taxicab operators to carry not less than $100,000 per person insurance coverage.[1] Nevertheless, the City granted Terminal a license.

---

[1] Plaintiff pleaded Eugene Mun. Code §§ 3.010, 3.025, 3.050 and 3.065, which provide in pertinent part:

"3.010 *Licenses Required.* No person shall engage in an activity or operate a device listed in Column A of the following table without first obtaining a license therefor from the finance officer as provided in this chapter.

| Column A<br>Licensed Business | [Columns B-E<br>omitted] | Column F<br>Liability Insurance |
|---|---|---|
| Taxicab Operator . . . . . | | . . . .Yes" |

"3.025 *Liability Insurance Required.* Applicants for licenses for which public liability insurance is required according to Column F, section 3.010, shall submit certificates of insurance, with a 30-day notice of cancellation clause, to the finance officer prior to the issuance of the license. *Public liability insurance shall include limits of coverage of not less than $100,000 per person* for bodily injury, $300,000 per occurrence for bodily injury, and $50,000 per occurrence for property damage, and shall be extended to cover completed operations." (Emphasis added.)

"3.050. *Application Review.* The finance officer shall refer each application to any persons, departments or agencies designated by this

On October 30, 1972, plaintiff was riding as a paying passenger in a taxicab operated by Terminal and was injured when the cab collided with the rear end of another automobile. Plaintiff sued Terminal and its driver for the injuries and recovered a judgment of $41,719.62. Plaintiff collected $10,000 on the judgment from Terminal's insurance carrier, but has been unable to collect the rest. The defendants' demurrer admits that at the present time the net leviable assets of Terminal and its driver do not exceed $4,500.

Plaintiff then brought the present action against the City of Eugene,[2] alleging that the City and its employees were negligent in issuing the license to Terminal when its application disclosed that it failed to meet the minimum liability insurance requirements. The trial court allowed the defendants' demurrer on the ground that the complaint failed to state a cause of action. Plaintiff appealed and the Court of Appeals affirmed, holding that under general

Code or the city manager to review it. In reviewing the qualifications of an applicant, the following shall be considered when appropriate:

"(a) Conformity of the proposed activity or device to this Code and to state and federal law.

"(b) Applicant's ability to perform a licensed activity which requires special knowledge or skill.

"(c) Financial responsibility of applicant to protect against losses to members of the public resulting from the licensed activity.

"(d) Unreasonable dangers to public health, safety or property which may result from the proposed activity or device.

"(e) Past violations of laws or ordinances.

"(f) Other considerations specifically required by this chapter."

"3.065 *Denial of Application.* If, on the basis of the application review under section 3.050, the finance officer determines that the applicant does not qualify for issuance of a license, the finance officer shall notify the applicant in writing that the application has been denied. The notice shall state the reason for denial and inform the applicant of the provisions of this Code providing for appeal to the council."

[2] Plaintiff also sued the unnamed agents of the City who allegedly issued the license to Terminal. Throughout this opinion we will refer to the City alone as "defendant." The employee who processed the application is referred to as the "agent" or "licensing agent."

principles of tort law plaintiff had failed to state a cause of action. 30 Or App at 1099. In a specially concurring opinion, Chief Judge Schwab stated that he believed the City was immune from suit under the "discretionary act" exception to government tort liability, ORS 30.265(3)(c). 30 Or App at 1102.

I. *Sufficiency of Defendant's Complaint*

1.  ORS 30.265(1) provides:

    " * * * every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function."

Under this statute, defendant is liable for the torts of its employees just as any private employer would be liable. Our initial inquiry therefore is whether plaintiff has alleged facts from which it can be concluded that the defendant's licensing agent committed a tort.

2-4.  Because this case is before us on demurrer, we must assume the truth of all plaintiff's well pleaded allegations and any facts that might conceivably be adduced as proof of such allegations. *Mezyk v. National Repossessions,* 241 Or 333, 405 P2d 840 (1965). To state a cause of action in negligence, plaintiff must allege that defendant owed him a duty, that defendant breached that duty, and that the breach was the cause in fact of some legally cognizable damage to plaintiff. *McEvoy v. Helickson,* 277 Or 781, 562 P2d 540 (1977); *Harding v. Bell,* 265 Or 202, 508 P2d 216 (1973). If the defendant's conduct is a cause in fact of plaintiff's injury, the element of causation is satisfied, and concepts of "negligence," "risk," and "foreseeability" are considered in determining the scope of defendant's duty and whether that duty was breached. *See Jacobs v. Tidewater Barge Lines,* 277 Or 809, 562 P2d 545 (1977); *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 469 P2d 783 (1970); *Sworden v. Gross,* 243 Or 83, 409 P2d 897 (1966); *Hills v. McGillvrey,* 240 Or 476, 402 P2d 722 (1965); *Dewey v. A. F. Klaveness & Co.,* 233 Or

[405]

515, 519, 379 P2d 560 (1963) (O'Connell, J., specially concurring).

In analyzing the sufficiency of the complaint, we will consider each of the above elements separately.

A. *Duty*

In negligence law, "duty" is simply "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Mezyk v. National Repossessions, supra* at 336, *quoting* W. Prosser, Law of Torts 333 (3d ed 1964). As a general rule, the scope of the duty owed is governed by the concept of "foreseeability," and a defendant whose act injures another will be held liable for the injury only if the injury was a reasonably foreseeable consequence of the act. *See McEvoy v. Helickson, supra; Sworden v. Gross, supra.*

In the instant case, the Court of Appeals concluded that the duty of defendant was something less than that which would exist in an ordinary negligence action. Noting that the City of Eugene had no legal obligation to license taxicabs, the court held that the City was "in the position of a person who acts when there is no duty to do so," and that consequently it had "only a duty to avoid making the situation worse than it was prior to [its] undertaking." 30 Or App at 1098, *citing* Prosser, Law of Torts 343 (4th ed 1971).

The problem with the analysis used by the Court of Appeals is that it fails to distinguish between the duty of the City itself and the duty of its agent. It is true that there was no duty on the part of the City to license taxicabs. The act complained of in this case, however, is not the enactment of the municipal ordinance, but the negligent issuance of the license by the City's agent. The question of duty must therefore be analyzed in terms of the agent's actions, not the City's.

Viewing the problem from this perspective, we conclude that the agent's duty should be defined in

[406]

terms of foreseeability. Unlike the City, the licensing agent was not "in the position of a person who acts when there is no duty to do so." The agent had an employment responsibility to process license applications pursuant to the requirements of the ordinance. Under general principles of common law negligence, the agent was required to perform this duty so as to avoid creating a foreseeable risk of harm to others.

■ Defendant argues that no duty whatsoever can exist because in enacting the ordinance defendant did not intend to become the insurer of all its citizens. This argument misconceives the source of the licensing agent's duty to act with reasonable care. The responsibility to perform the act may arise from the ordinance, but the duty to perform the act *with reasonable care* arises from principles of common law negligence. It is immaterial whether or not the licensing agent intended to assume a duty in this case, just as it would be immaterial whether or not a private individual intended to assume a duty in doing a particular act. Virtually all government activities have their ultimate source in some legislative enactment, and to adopt defendant's theory would, in effect, restore the doctrine of sovereign immunity, which has been abolished by statute in Oregon. ORS 30.265.

We appreciate the problem that arises in treating the government under the "reasonable person" standard, for government does many things that normal persons do not. We also appreciate the concern expressed by some courts that imposition of unlimited liability upon municipalities may "dissuade [municipalities] from enacting ordinances designed for the protection and welfare of the general public, and thereby the general public would lose the benefit of salutary legislative enactments." *Stigler v. City of Chicago*, 48 Ill 2d 20, 268 NE2d 26, 29 (1971); *Gerneth v. City of Detroit*, 465 F2d 784, 787 (6th Cir 1972), *cert. den.* 409 US 1109 (1973). In Oregon, however, municipalities are protected from unlimited liability by ORS 30.270, which imposes monetary limits on the

[407]

liability of any public body, both with respect to individual claims and claims arising out of a single accident or occurrence.[3] Within this range of limited liability, municipalities can further protect themselves by obtaining liability insurance, the cost of which can be allocated through taxation and licensing fees. ORS 30.282; *see* Henke, *Oregon's Governmental Tort Liability Law From a National Perspective,* 48 Or L Rev 95, 118-20 (1968). Finally, the requirement that the risk created by the activity of the municipal agent fall within the "zone of foreseeability" imposes an additional limitation on the scope of governmental liability. Should these limitations prove insufficient, the legislature may act to provide additional restrictions.

Defendant argues that despite the provisions of ORS 30.265 it should nevertheless escape liability because the agent's duty runs only to the public generally, not to individual members of the public. Defendant relies on numerous cases for this proposition, including *Gerneth v. City of Detroit, supra; Whitney v. City of New York,* 27 App Div 2d 528, 275 NYS2d 783 (1966); *Leger v. Kelley,* 142 Conn 585, 116 A2d 429 (1955); *Chambers v. Palaggi,* 88 Ill App 2d 221, 232 NE2d 69 (1967); *Georges v. Tudor,* 16 Wash App 407, 556 P2d 564 (1976); *Duran v. City of Tucson,* 20 Ariz App 22, 509 P2d 1059 (1973); *Trautman v. City of Stamford,* 32 Conn Sup 258, 350 A2d 782 (1975); *Massengill v. Yuma County,* 104 Ariz 518, 456 P2d 376 (1969); and *Stigler v. City of Chicago, supra.* While some of these cases involve

---

[3] ORS 30.270(1) provides:

"Liability of any public body or its officers, employes or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 shall not exceed:

"(a) $50,000 to any claimant for any number of claims for damage to or destruction of property, including consequential damages, arising out of a single accident or occurrence;

"(b) $100,000 to any claimant for all other claims arising out of a single accident or occurrence.

"(c) $300,000 for any number of claims arising out of a single accident or occurrence."

facts similar to those before us, others appear less on point. For example, both *Trautman v. City of Stamford* and *Massengill v. Yuma County* involved actions for damages alleged to have been caused by the failure of police officers to arrest certain motorists. *Stigler v. City of Chicago* was an action against a city for failure to enforce its housing code. These cases, which deal with a failure on the part of public officials to act at all, involve considerations quite different from those in a case such as this, where an act is alleged to have been performed and performed negligently. As a general rule, one is held to a higher standard of care when he affirmatively acts than when he fails to act at all. W. Prosser, *supra* at § 56; Bohlen, *The Moral Duty to Aid Others As a Basis of Tort Liability,* 56 U Pa L Rev 217 (1908).

Because this case is not one of failure to act at all, we express no opinion on the scope of governmental duty in such a case. As to the validity of the public vs. private duty distinction in a case such as this, we believe the better view to be the one stated recently by the Supreme Court of Alaska in *Adams v. State,* 555 P2d 235 (Alaska 1976). *Adams* involved an action against the State of Alaska for damages resulting from a hotel fire. Plaintiffs, who included some of those injured in the fire and the personal representatives of those who died, alleged that three fire inspectors had examined the hotel and determined it to be dangerous, but allowed the hotel to continue operations. In holding that these allegations presented an issue of fact to be resolved at trial, the court rejected the distinction between "public" and "private" duty:

> "[W]e consider that the 'duty to all, duty to no-one' doctrine is in reality a form of sovereign immunity, which is a matter dealt with by statute in Alaska, and not to be amplified by court-created doctrine. * * * Where there is no immunity, the state is to be treated like a private litigant. To allow the public duty doctrine to disturb this equality would create immunity where the legislature has not." *Id.* at 241-42.

In his treatise on administrative law, Professor Davis expresses similar sentiments with respect to courts that apply the "public duty" doctrine in the face of statutory abrogation of sovereign immunity:

"Surely when a court construes away such an unequivocal statutory provision [abrogating sovereign immunity], the judicial responsibility for governmental irresponsibility is very grave indeed." 3 K. Davis, Administrative Law Treatise 458-59, § 25.06 (1958).

*See also Coffey v. City of Milwaukee,* 74 Wis 2d 526, 247 NW2d 132, 139 (1976) (holding that "[a]ny duty owed to the public generally is a duty owed to individual members of the public"); *Dutton v. Bognor Regis Urban District Council* [1972] 1 QB 373. *See generally* 1A C. Antieau, Municipal Corporations § 11.25 (1974); 18 McQuillan, Municipal Corporations § 53.04b (3d ed 1977); Henke, *supra;* Note, 12 Will L J 188 (1975).

Even those courts that purport to recognize the "public duty" doctrine have recognized a variety of "exceptions" under which a public entity may be liable for an employee's negligent execution of a statutory duty. In *Campbell v. City of Bellevue,* 85 Wash 2d 1, 530 P2d 234 (1975), a homeowner had installed an underwater lighting system in a creek running through his property. A city electrical inspector discovered that the wiring was defective and notified the homeowner that it constituted a "threat to life." The inspector, however, did not sever the connection as required by municipal ordinance, and a neighbor subseqently fell into the creek and was electrocuted. On appeal from a judgment holding the city liable for the negligent inspection, the Washington Supreme Court recognized the "public duty" doctrine but held the doctrine inapplicable "where a relationship exists or has developed between an injured plaintiff and agents of the municipality * * *." 530 P2d at 239. The court noted that the duty to inspect was not imposed solely for the protection of the general public but

"more particularly for the benefit of those persons or class of persons residing within the ambit of the danger involved * * *." *Id.* at 241.

We need not undertake an extensive analysis of the positions taken by the various courts and commentators for we conclude, as did the Alaska Supreme Court in *Adams v. State, supra,* that any distinction between "public" and "private" duty is precluded by statute in this state.[4] ORS 30.265(1) provides that " * * * every public body is liable for its torts and those of its officers, employes and agents * * * *whether arising out of a governmental or proprietary function.*" (Emphasis added.) Prior to the enactment of this statute, this court stated:

> " * * * our power to choose the policy of this state with reference to the right of persons to recover for torts committed by agencies of the state has been limited both by constitution and statute." *Vendrell v. School District No. 26C et al,* 226 Or 263, 278, 360 P2d 282 (1961).

We believe these sentiments are equally applicable now that governmental tort immunity has been abolished by statute. In abolishing governmental tort immunity, the Legislature specifically provided for certain exceptions under which immunity would be retained, ORS 30.265(3), and we find no warrant for judicially engrafting an additional exception onto the statute.

We therefore hold that the municipal employee who issued the taxicab license to Terminal had a duty to exercise reasonable care in performing this function so as to avoid creating a foreseeable risk of harm to others.

B. *Breach of Duty*

The next question for consideration is whether plaintiff has alleged facts from which it can be

---

[4] To the extent that *Svenson v. Brix,* 156 Or 236, 64 P2d 830 (1937), relies on the public duty doctrine, we consider it to have been overruled by the enactment of ORS 30.265(1).

[411]

inferred that the municipal agent breached his or her duty to plaintiff.[5] The pertinent allegation in plaintiff's complaint is as follows:

"On or about July 1, 1972, the Defendants were careless and negligent in one or more of the following particulars:

"a) By issuing a taxicab license to Terminal Taxi Service, Inc. when the Defendants knew, or with the exercise of reasonable care should have known that Terminal Taxi Service, Inc. did not possess the minimum amount of public liability insurance to qualify for such a license under the provisions of the Eugene Code as pleaded in paragraph IV above.

"b) By issuing a taxicab license to Terminal Taxi Service, Inc. when the Defendants knew, or with the exercise of reasonable care should have known that Terminal Taxi Service, Inc. had not submitted a sufficient certificate of insurance as required by the Eugene Code as pleaded in paragraph IV above."

Defendant does not discuss the element of breach in its brief on appeal, and we believe that if plaintiff is able to prove the above allegation at trial, a jury could find a breach of duty. A jury might reasonably conclude that the licensing agent should have foreseen that the issuance of the license without requiring the applicant to submit proof of liability insurance would lead to the result that in fact occurred in this case: a passenger injured as a result of the applicant's negligence is

---

[5] It should be observed at the outset that this case does not involve the doctrine commonly referred to as negligence per se. Under that rule, the violation of a statute raises a disputable presumption of negligence if the violation results in injury to a member of the class of persons intended to be protected by the legislation and the harm is of a kind the legislation was enacted to prevent. *Barnum v. Williams,* 264 Or 71, 504 P2d 122 (1972). For reasons stated elsewhere in this opinion, we conclude that the agent of the City had a non-discretionary employment responsibility to process license applications and to issue a license only where the applicant satisfied the requirements of the ordinance. The ordinance, however, does not purport to make it a "violation" on the part of the licensing agent to fail to properly carry out his responsibility. Any liability in this respect rests on principles of common law negligence, not upon the ordinance.

For these reasons, Count I of plaintiff's amended complaint, in which plaintiff alleged that "Defendants violated [the Eugene Code]," contains an unsupportable allegation. Consequently, the trial court did not err in sustaining defendants' demurrer to Count I.

unable to collect on a judgment in favor of the passenger. Assuming that plaintiff is able to prove his allegations at trial, and at this stage of the proceedings we must make that assumption, we cannot say as a matter of law that no breach of duty occurred.

C. *Causation and Damage*

Plaintiff alleged that as a result of the breach of duty by the City's agent

" * * * [p]laintiff has been and is unable to collect upon his judgment against Terminal Taxi Service or [Terminal's driver] except for the $10,000 policy limits of Defendant's insurance, and $4,500 from Defendant's net leviable assets."[6]

Defendant claims that plaintiff has not alleged the requisite causation between defendant's act and plaintiff's injuries. We disagree.

■ ■ For legal causation to exist under general principles of negligence, the act of the defendant must at least be a "substantial factor" in bringing about the injury to plaintiff. *Sworden v. Gross, supra.* Clearly, the act of the agent in issuing the license without requiring that Terminal obtain the minimum liability insurance mandated by ordinance was a cause in fact of plaintiff's inability to collect on his judgment. The agent's failure to exercise due care removed a source from which plaintiff would have been able to satisfy the judgment.[7]

---

[6] It is clear from the context of this allegation that plaintiff's reference to "Defendant" is intended to refer to Terminal Taxi Service, not to the "Defendant" City.

[7] Defendant relies on *Hagberg v. City of Sioux Falls,* 281 F Supp 460 (D SD 1968), where the court denied recovery against a city for failure to enforce an ordinance relating to blasting permits. The court stated:

"Furthermore, it appears abundantly clear that the failure of the City of Sioux Falls to enforce its ordinance was not the proximate cause of the accident. * * * It is elementary that one such element [of negligence] is that violation of the ordinance must be the proximate cause of one's failure to comply with a municipal ordinance, * * *." 281 F Supp at 470.

We do not find this reasoning persuasive in the present case. Plaintiff has not alleged that the licensing agent caused the accident, but that the agent caused plaintiff's inability to collect on his judgment.

Defendant does not actually argue that the agent's negligence was not a cause in fact of plaintiff's inability to collect on his judgment. Rather, defendant appears to argue that plaintiff's only injury was caused by Terminal, a "third party tortfeasor," rather than by the agent. In essence, defendant would have us hold that the inability to collect on a judgment is not a legally cognizable injury under the law of negligence.

In *Esselstyn v. Casteel,* 205 Or 344, 286 P2d 665, 288 P2d 214, 288 P2d 215 (1955), this court held that a county clerk who negligently failed to enter a divorce decree and accompanying property settlement in the county's judgment lien docket could be held liable to the holder of the decree when the holder lost her priority to a subsequent mortgagee. The court implicitly recognized that a judgment is a form of property which, like other forms of property, is entitled to legal protection.

A judgment confers upon the holder a right to collect money, and that right can be assigned or surrendered for consideration. Consequently, a judgment has all the incidents of property and we can find no principled reason for distinguishing a judgment from other forms of property. We therefore conclude that plaintiff's complaint sufficiently alleges that the negligence of the City's agent was the cause in fact of a legally cognizable injury to plaintiff.

II. *The Agent's Discretion*

Defendant contends that even if plaintiff has stated a cause of action in negligence, defendant nevertheless cannot be held liable because the act of the city employee in issuing the license to Terminal was a discretionary one for which immunity is provided by ORS 30.265(3)(c). The defense of immunity is one that may properly be considered on demurrer. *Smith v. Cooper,* 256 Or 485, 475 P2d 78 (1970).

ORS 30.265(3)(c), the discretionary act exception to governmental tort liability, provides in part:

[414]

"Every public body and its officers, employes, and agents acting within the scope of their employment or duties are immune from liability for:

"* * * * *.

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

In his specially concurring opinion to the decision in the Court of Appeals, Chief Judge Schwab concluded that the City was immune under this provision because "the decision by the government as to whether it will provide complete or haphazard or no enforcement at all of licensing and regulatory legislation is discretionary in the context of tort liability." 30 Or App at 1102. Like the majority, the Chief Judge's analysis focuses on the City's decision to license. As noted above, however, the act complained of in this case is the issuance of the license to Terminal, not the decision by the City to license generally. Our analysis therefore differs from Chief Judge Schwab's on this issue.

In analyzing the allegations in plaintiff's complaint to determine whether or not defendant is immune from suit, we bear in mind the fact that "not every exercise of judgment and choice is the exercise of discretion. It depends on the kind of judgments for which responsibility has been delegated to the particular officer." *McBride v. Magnuson,* 282 Or 433, 436, 578 P2d 1259, 1260 (1978).

The ordinance under which Terminal obtained its license in the present case may have contemplated some exercise of discretion, such as a consideration of the applicant's ability and the possibility of unreasonable danger to the public that might result from issuance of the license. Eugene Mun. Code § 3.050(b),(d). Nevertheless, the language relating to minimum liability insurance is clearly mandatory, and we do not believe the language, taken as a whole, vested the licensing agent with discretion to issue a

[415]

license to an applicant who did not meet these requirements.[8] Although the decision to issue the license, in the abstract, may or may not have required discretion, the only duty of the agent regarding the liability insurance was to compare the facts stated in the application with the requirements of the ordinance. We do not consider this to be the kind of function that is inappropriate for judicial review. *Cf., Smith v. Cooper, supra* (planning and designing of highways); *Jarrett v. Wills,* 235 Or 51, 383 P2d 995 (1963) (decision to release inmate from state hospital for the mentally retarded).

We therefore conclude that defendant is not immune under ORS 30.265(3)(c), the discretionary act exception to governmental liability.

### III. *Conclusion*

For the reasons stated above, we hold that the trial court erred in sustaining the demurrer to plaintiff's complaint. Plaintiff has alleged facts from which it can be concluded that the city employee failed to exercise reasonable care in issuing a taxicab license to Terminal and that this breach was the cause in fact of legally cognizable damage to plaintiff. The demurrer, therefore, should have been overruled.

Reversed and remanded.

---

[8] *See* note 1, *supra.*