Argued and submitted October 22, 1986, affirmed March 4, 1987

COMPUTERIZED DESIGN et al,
*Appellant,*

*v.*

GENRAD, INC. et al,
*Respondents.*

(A8309-05914; CA A36982)

733 P2d 485

Roger J. Leo, Portland, argued the cause for appellant. With him on the briefs were David W. Harper, Portland, and Harper, Leo, Hollander and Parker, Portland.

Janet C. Neuman, Portland, argued the cause for respondent GenRad, Inc. With her on the brief were Don H. Marmaduke, Portland, and Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

Steven W. Seymour, Portland, argued the cause for respondent Grant & Roth Plastics, Inc. With him on the brief were Kevin E. Brannon, Portland, and Samuels, Samuels, Yoelin & Weiner, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Computerized Design and Manufacturing, Inc. (CDM) appeals from a trial court judgment dismissing its negligence claims against both defendants.[1] It contends that the trial court erred in concluding that its third amended complaint did not state a claim for negligence against GenRad, Inc. (GenRad), because GenRad owed no duty to CDM, or against Grant & Roth Plastics, Inc. (Grant & Roth), because the only duties Grant & Roth owed CDM were contractual. We affirm.

Because CDM's claims were dismissed, we take the allegations from its complaint as true. It was engaged in the computerized design and manufacture of metal molds for plastic parts. Grant & Roth manufactures plastic parts. GenRad manufactures and markets electronic products. Before February 9, 1983, GenRad made a contract for Grant & Roth to manufacture 13 plastic parts to be used as components in electronic products which GenRad was making. On February 9, Grant & Roth made a contract with CDM, partly written and partly oral, whereby CDM would design and manufacture metal molds for the parts that Grant & Roth was to make. GenRad agreed to provide CDM promptly with blueprints for each part which it needed. The blueprints were to be used as the basis for preparing the mold design. GenRad reserved the right to review and approve the mold designs and the molds.

CDM alleges that defendants assumed these duties:

"1. Defendants would diligently and in a timely and workmanlike manner provide correct final parts blueprints to Plaintiff;

"2. Defendants would provide a timely and reasonable delivery to Plaintiff of said parts blueprints;

"3. Defendants would comply with the delivery schedule of said parts blueprints by delivering them to Plaintiff on time as scheduled;

"4. Defendants would furnish to Plaintiff any modifications to the parts design and blueprints in a timely manner; [and]

---

[1] CDM's third amended complaint also alleges claims in contract against both GenRad and Grant & Roth. After dismissing the negligence claims against both defendants, the trial court entered an ORCP 67B judgment to allow an appeal of the dismissals. The contract claims are pending.

"5. The duties of Defendants as alleged in subparagraphs 1 through 4 above, inclusive, would be performed by them under a standard of fair dealing and good faith with the Plaintiff."

CDM also alleges that defendants were

"negligent in failing to reasonably perform the duties undertaken, in one or more of the following particulars, which breach was the proximate cause of the damages complained of by Plaintiff:

"1. By delivering to Plaintiff incorrect parts blueprints faulty in the following particulars:

"(a) The dimensional figures on the prints were wrong;

"(b) The parts as designed would not fit together as GenRad required for the final product;

"(c) The prints did not have sufficient detail of dimensions and angles to design or construct a mold;

"(d) Rib and support drawings were not complete.

"2. In representing [to] the Plaintiff that the parts blueprints provided by Defendants were correct and complete.

"3. By representing to Plaintiff that they would provide correct final parts blueprints and that schedules would be followed.

"4. By continually amending and modifying the parts blueprints;

"5. By failing to promptly deliver to Plaintiff correct final parts blueprints in a timely manner;

"6. By failing to follow the schedule of delivery to Plaintiff of the final parts blueprints;

"7. By failing to timely notify Plaintiff of changes to the parts blueprints as they were made;

"8. By requesting Plaintiff to keep its employees, subcontractors and production plant in readiness for design and manufacture of the molds after corrected parts blueprints were finalized, while simultaneously failing to perform its obligations and representations as set forth above; and

"9. In failing to act toward Plaintiff in good faith and provide Plaintiff with the correct final parts blueprints."

CDM purchased special supplies, hired extra staff

and subcontractors and did not accept other available business contracts. It alleges that, when GenRad and Grant & Roth failed to supply the parts blueprints and Grant & Roth failed to complete the contract, CDM lost its profits on the transaction, lost the business it otherwise could have had and, as a result, became insolvent and bankrupt. On its negligence claims, CDM prayed for the expenses incurred, loss of the value of its business and punitive damages. The trial court granted defendants' motions to dismiss CDM's negligence claims and to strike the prayer for punitive damages.

CDM's first three assignments of error deal with the trial court's dismissal of the negligence claims against Grant & Roth. It contends that the trial court erred in concluding that it had not stated a claim in negligence against Grant & Roth, on the ground that the only duties set out in the complaint are contractual in nature. It argues that Grant & Roth assumed duties beyond those in the contract.

To state a negligence claim, CDM must allege a duty imposed by law upon Grant & Roth. *See Brennen v. City of Eugene,* 285 Or 401, 405, 591 P2d 719 (1979). The duty must be other than one which arises solely from a contract between the parties. Damages which arise solely from a breach of contract are not recoverable in tort. *See Kisle v. St. Paul Fire & Marine Ins.,* 262 Or 1, 6-7, 495 P2d 1198 (1972). CDM had a contract to make molds. Grant & Roth assumed certain duties, including the duty to provide CDM with specifications for the molds and to do so within a reasonable time. *See* ORS 72.3090; ORS 72.3110. Grant & Roth also had the duty to act in good faith. ORS 72.3110. Taking the facts in the complaint as true, Grant & Roth's failure to supply the specifications in a timely fashion amounted to a breach of contract. ORS 72.3110(3)(b). All of the duties that CDM specified in its complaint are duties that arose from the contract relationship.

CDM argues that it may sue in tort to recover for losses that would not be covered by its breach of contract claim. It cites several cases in which parties to a contract were permitted to sue in tort in addition to an action on the contract. However, all of those cases involve a professional relationship, a relationship with a person who holds himself or herself out to have special skill or expertise or a person with some other special relationship to the plaintiff. The duties

recognized in those cases are imposed by law because of relationship. There must be some source of legal obligation, other than the duties set out in a contract and arising from general contract law, before a tort action will lie. *Kisle v. St. Paul Fire & Marine Ins. Co., supra,* 262 Or at 6-7. Plaintiff has not alleged any duty beyond contractual duties. The trial court did not err in dismissing the negligence claim against Grant & Roth.

■　　CDM's next three assignments of error deal with the trial court's dismissal of the negligence claims against GenRad. CDM contends that the trial court erred in concluding that there was no relationship between CDM and GenRad from which a duty could arise. It argues that GenRad assumed the duties set out above, and that tort actions do not require a contract or other special relationship to establish that a duty is owed.

To state a cause of action in negligence against GenRad, CDM must establish that GenRad owed it a duty. *Brennen v. City of Eugene, supra.* There was no contract relationship between them. CDM alleges, however, that GenRad assumed the duty to provide, in a timely fashion, accurate parts blueprints for the molds that CDM was to design and manufacture. The complaint essentially attempts to impose a tort duty on a third party in a sale of goods transaction to perform duties that are the subject of the contracting parties' agreement. It argues that there are several sources of authority for imposing liability.

First, it cites numerous cases involving duties owed by professionals. In each, the tort action was based on a duty imposed by law upon a person holding himself out to have professional skill or expertise. None of those cases is applicable. GenRad did not hold itself out as having professional skill and expertise in the area of parts blueprints nor did it undertake a professional relationship with CDM regarding the blueprints for the parts molds. Second, CDM cites cases involving tort liability imposed on manufacturers by statute. *See, e.g., Smith v. General Paving Company,* 24 Ill App 3rd 858, 321 NE2d 689 (1974) (tort liability based on a statute providing for recovery for property damage for obstructing drains). There is no statutory basis for tort liability in this case. Third, it cites cases imposing liability as a result of a continuous

course of dealing. It has not alleged a course of dealing with GenRad. CDM also cites cases dealing with a construction contractor's liability for the breach of an express or implied warranty. No such warranty is involved in this case.

Finally, CDM cites the "California approach." It relies on *Connor v. Great Western Savings & Loan Ass'n,* 69 Cal 2d 850, 73 Cal Rptr 369, 447 P2d 609 (1968), to support its argument that, because GenRad agreed to provide the blueprints for the parts which it needed and reserved the right to inspect the mold designs and the molds, it can be held liable for tort damages when Grant & Roth breached its contract. In *Connor,* the lender who provided funds for a housing development exercised extensive control over the development, setting the standards for how the work was to be performed and inspecting the work. However, the lender failed to assure that the construction was performed to industry standards or that the developer was adequately capitalized. The lender was held liable to the homebuyers for negligence. In this case, it is not alleged that GenRad exercised the degree of control shown in *Connor.* Even if we were to adopt the *Conner* rule as Oregon law, it would not apply to these facts.

CDM has cited no authority to support its proposition that GenRad, as a third party to the contract between CDM and Grant & Roth, can be held liable in tort for the damages that resulted from Grant & Roth's failure to perform its duties under the contract, and we are aware of none. The trial court did not err in dismissing the negligence claim against GenRad.

Affirmed.