Argued and submitted November 10, 2015, affirmed April 26, 2017

Brendan FARNWORTH
and Jane Farnworth,
individuals,
*Plaintiffs-Appellants,*

*v.*

Keith F. ROSSETTO,
dba Keith Rossetto Construction,
*Defendant,*

*and*

CITY OF MEDFORD,
an Oregon municipal corporation,
*Defendant-Respondent.*

Jackson County Circuit Court
14CV04436; A158913

396 P3d 272

Michael W. Franell argued the cause and filed the briefs for appellants.

Eric B. Mitton argued the cause for respondent. With him on the brief was Hornecker Cowling LLP.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

### SERCOMBE, P. J.

Plaintiff homeowners brought this common-law negligence action against the City of Medford under the Oregon Tort Claims Act (OTCA), ORS 30.260 to 30.300,[1] contending that the city was negligent in issuing a certificate of occupancy for their home despite an obvious violation of a building code requirement for the installation of a weather barrier. Plaintiffs alleged that the absence of the barrier was apparent at the time of the inspection of the home in July 2004 and should have been noticed by the inspector. Plaintiffs alleged that, by virtue of the city's obligation to enforce the building code, the city should have taken action in response to the absence of a weather barrier and was negligent in failing to do so. On the city's motion for summary judgment, the trial court dismissed the claim, concluding that the building code does not provide a private right of action against the city. We affirm the trial court, but based on a slightly different rationale.

In reviewing the trial court's granting of the city's motion for summary judgment, we view the evidence and all reasonable inferences in the light most favorable to plaintiffs, as the nonmoving party, for the purpose of determining whether there is no genuine issue of material fact and the city is entitled to judgment as a matter of law. ORCP 47 C. The facts in the record on summary judgment are undisputed for purposes of the issues presented on appeal. In 2004, plaintiffs hired a builder to construct a home in Medford, Oregon. The record on summary judgment includes a record of inspections made by the city during the construction of plaintiffs' house and a photograph of the property taken on the day after the inspection of July 14, 2004. The photograph shows that, at that time, the windows had been framed but that no sheathing paper had been installed. The city made its final inspection of the house on September 21, 2004.

---

[1] Under the OTCA, every "public body is subject to civil action for its torts." ORS 30.265(1). A "tort" is defined in ORS 30.260(8) as the "breach of a legal duty that is imposed by law * * * the breach of which results in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy."

At the relevant time, with some exceptions, the applicable building code required installation of a "weather-resistant sheathing paper,"[2] a weather barrier to protect the house from outside moisture. The building code required inspections of the foundation, frame, and masonry, and the plumbing, mechanical, gas, and electrical systems. Oregon Residential Specialty Code (ORSC) section R109. It permitted "other inspections to ascertain compliance" with the building code, ORSC section R109.1.5, but did not require an inspection for the presence of weather-resistant sheathing paper or a weather barrier. Nor did the building code require a general inspection for compliance with or violations of the building code.

Plaintiffs' complaint alleged that plaintiffs discovered water damage to their home in 2014, and learned that the damage was caused by the absence of a weather barrier. Plaintiffs' complaint alleged that the city is "charged with the duty of routine enforcement" of the building code. It alleged that, by virtue of its responsibility to enforce the building code and to approve occupancy, the city had a special relationship with plaintiffs that gave rise to a duty to "insure the protection of plaintiffs' interests."[3] Plaintiffs also

---

[2] The Oregon legislature has delegated responsibility for promulgating a building code to the director of the Department of Consumer and Business Services (DCBS). ORS 455.020; ORS 455.040; ORS 455.055. At the relevant time, the applicable residential building code for the State of Oregon was the Oregon Residential Specialty Code, OAR 918-480-0005 (2004), which was based on the 2000 edition of the International Residential Code for One & Two Family Dwellings, as published by the International Code Council, Inc. The building code is administered by the director of DCBS, ORS 455.100, but a municipality may assume responsibility for administration and enforcement of a building inspection program. ORS 455.148. At the relevant time, the City of Medford had its own inspection program.

[3] Oregon case law recognizes several contexts in which a "special relationship" can give rise to a civil action for damages or for a protective remedy. *See Loosli v. City of Salem*, 345 Or 303, 193 P3d 623 (2008) (describing requirement for special relationship predicated on some duty beyond common-law duty to exercise reasonable care to prevent foreseeable harm as prerequisite to liability in negligence for purely economic harm); *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 831 P2d 7 (1992) (describing special relationship between contracting parties on which tort claim for negligent performance of contract obligations can be the basis); *Donaca v. Curry County*, 303 Or 30, 35, 734 P2d 1339 (1987) (describing negligence liability based on a duty arising "from a source external to the common law of negligence itself"); *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987) (same).

alleged that, at the time of the July 14 inspection, the city's inspector should have noticed that no sheathing paper had been or would be installed, and knew or should have known that the failure to install sheathing paper would cause a risk of water incursion and mold damage to the home. Thus, the complaint alleged, the city acted unreasonably in failing to enforce the building code by "failing to ensure [that the builder] installed" a weather barrier and by "finaling" the permit.[4]

In its motion for summary judgment, the city contended that, assuming that the building code required the installation of sheathing paper and that the builder had failed to install it,[5] the city had no affirmative duty under the building code to inspect for the builder's compliance with the code provisions generally, and no obligation to inspect for sheathing paper or any other type of weather barrier and, therefore, the presence or absence of the weather barrier is not an interest of the kind that the law protects and the city did not act unreasonably in not making such an inspection.[6] In their response to the motion for summary

---

[4] The parties appear to agree that the "finaling" of a permit results in the issuance of a "certificate of occupancy." A "certificate of occupancy" is not defined in the applicable statutes, administrative rules, or building code. At the relevant time, OAR 166-150-0020(10) (2004), relating to the retention of records, described a certificate of occupancy as a certificate "recognizing compliance with the minimum standards set by state and local laws for structures." We note that OAR 918-480-0140, which was first promulgated in 2008 and is not applicable here, provides, in part:

"(1) Prior to occupancy of a new residential dwelling or townhouse[,] the building official must issue a certificate of occupancy in the form and format established by the Division, unless a temporary certificate of occupancy is issued by the building official.

"* * * * *

"(4) A building official may revoke a certificate of occupancy or a temporary certificate of occupancy when the residential dwelling or townhouse is in violation of applicable law that poses a threat to health and safety. The revocation must be in writing and state the basis for the revocation of the certificate of occupancy."

The record in this case does not include the certificate of occupancy issued by the city.

[5] The city does not admit that sheathing paper was required for plaintiffs' house or that the evidence would require the finding that an inspector should have known that no weather barrier would be installed.

[6] The city did not raise discretionary-function immunity as a defense or as a ground for summary judgment. *See* ORS 30.265(6)(c).

judgment, plaintiffs did not dispute that the building code itself did not require an inspection for a weather barrier. But they contended that the city's negligence arose not from a failure to inspect, but from the breach of a standard of care implicit in the city's obligation under the statutes and the building code to enforce the builder's obligations under the building code generally. Plaintiffs noted that the purpose of the building code, as expressed in ORS 455.020, is to "establish uniform performance standards providing reasonable safeguards for health, safety, welfare, comfort and security of the residents of this state who are occupants and users of buildings." They noted, further, that, under ORS 455.148(3), a municipality assuming responsibility for the administration and enforcement of a building inspection program "shall *** appoint *** a building official," who shall, in turn, "attend to all aspects of code enforcement."[7] Plaintiffs contended that the city, having assumed responsibility for code enforcement, had an obligation to enforce the building code, and that its issuance of a certificate of occupancy despite known violations of the building code was unreasonable and actionable in negligence, to the extent that it caused plaintiffs' damages. Therefore, plaintiffs asserted, the city's motion for summary judgment should be denied.

In granting the city's motion for summary judgment, the trial court reasoned that plaintiffs could have brought a negligence claim against the builder. *See Abraham v. T. Henry Construction, Inc.*, 350 Or 29, 249 P3d 534 (2011). But, relying on the Supreme Court's opinion in *Doyle v. City of Medford*, 356 Or 336, 337 P3d 797 (2014), the court concluded that the building code regulatory scheme "does not establish a private right of action in favor of a builder or a homeowner against a municipality for the negligent failure to enforce its provisions."

---

[7] The version of the building code in effect at the relevant time provided that the local building code official "is hereby authorized and directed to enforce the provisions of this code." ORSC section R104.1. Plaintiffs also cited a provision in the model building code stating that, "[a]fter the building official inspects the building or structure and finds no violations of the provisions of this code or other laws that are enforced by the department of building safety, the building official shall issue a certificate of occupancy[.]" But, as the parties acknowledge, that section of the model building code was not adopted in Oregon.

Plaintiffs challenge the trial court's granting of the city's motion for summary judgment.[8] On appeal, plaintiffs continue to assert that the city has an obligation under the statutes to enforce the building code, and that that obligation, together with the stated purpose of the building code to protect the "health, safety, welfare, and comfort and security" of occupants and users, ORS 455.020, gave rise to a duty by the city to protect plaintiffs from harm, the breach of which is enforceable in negligence.

The city responds that, because it has no obligation and did not undertake to inspect plaintiffs' home for violations of the building code generally, and because there is no requirement in the building code to inspect and approve a weather barrier, the city was not negligent as a matter of law. We agree with the city that, in the absence of a requirement in the law for an inspection for violations of the building code in general, or for an inspection specifically directed to the presence of a weather barrier, the law does not provide a remedy in negligence for the city's conduct in failing to take any action in response to the alleged violation.

The Supreme Court's opinion in *Brennen v. City of Eugene*, 285 Or 401, 591 P2d 719 (1979), cited by plaintiffs in support of their position, is the starting place for our analysis. In that case, the City of Eugene adopted an ordinance for the licensing of taxicab drivers. The city's code required an applicant for a license to submit a certificate evidencing liability insurance coverage of not less than $100,000 per person. 285 Or at 403. An ordinance explicitly required that, in reviewing an application for licensing, the city should consider the "[f]inancial responsibility of applicant to protect against losses to members of the public resulting from the licensed activity." *Id.* at 404 n 1. It

---

[8] As discussed below, contrary to the trial court's assumption, we do not understand plaintiffs' claim to be based on statutory liability. *See Doyle*, 356 Or at 344 ("Statutory liability arises when a statute either expressly or impliedly creates a private right of action for the violation of a statutory duty."); *Scovill v. City of Astoria*, 324 Or 159, 169-70, 921 P2d 1312 (1996) (negligence claim may be maintained based on duty imposed by statute where legislature has contemplated that there could be liability in connection with the authority and duty to take actions required by statute). Plaintiffs do not assert that the city violated the building code. Rather, plaintiffs assert a duty or standard of care derived from the statutes and building code.

provided that if, based on a review of the application, the city's finance officer determined that the applicant did not qualify for the issuance of a license, the finance officer was required to notify the applicant in writing that the application was denied. *Id.*

An employee of the city issued a license to a taxicab operator based on an application that disclosed that the operator carried only $10,000 in liability insurance. The plaintiff was injured when the taxicab collided with another vehicle. He sued the city, contending that the city was negligent in issuing a license based on an application that showed that the applicant carried less than the required amount of liability insurance. *Id.* at 404.

The trial court dismissed the complaint in *Brennen* for failure to state a claim. We affirmed, reasoning that the city, having voluntarily assumed the duty to require minimum liability insurance coverage "to avoid causing harm to any member of the public," "did not thereby become obligated to itself insure each member of the public against injury caused by insufficiently insured taxicab operators." *Brennen v. City of Eugene*, 30 Or App 1093, 1098-99, 569 P2d 1083 (1977).

The Supreme Court reversed. The court initially explained that, under the OTCA and principles of common-law negligence, the city could be liable for the negligence of its employee. *Brennen*, 285 Or at 405. Citing the text of the licensing ordinance and pre-*Fazzolari* common-law negligence principles,[9] the court rejected our conclusion that the city had no duty to protect the plaintiff. *Id.* at 406. The court also rejected the city's contention that there was no liability because the city did not enact the ordinance in order to become the insurer of all its citizens. The court said that the proper focus was on the employee's duty to exercise

---

[9] "In negligence law, 'duty' is simply 'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' *Mezyk v. National Repossessions*, [241 Or 333, 336, 405 P2d 840 (1965) (quoting] W. Prosser, *Law of Torts* 333 (3d ed 1964). As a general rule, the scope of the duty owed is governed by the concept of 'foreseeability,' and a defendant whose act injures another will be held liable for the injury only if the injury was a reasonably foreseeable consequence of the act." *Brennen*, 285 Or at 406.

reasonable care in carrying out the function required by the ordinance. The court explained that, although the responsibility to perform the act had its source in the ordinance, the duty to perform the requirements of the ordinance with reasonable care arose from principles of common-law negligence and that, under those general principles, "the agent was required to perform this duty so as to avoid creating a foreseeable risk of harm to others." *Id.* at 406-07.[10] The court held that, having undertaken responsibility for the issuance of taxicab licenses, "the municipal employee who issued the taxicab license * * * had a duty to exercise reasonable care in performing this function so as to avoid creating a foreseeable risk of harm to others." *Id.* at 411. The court concluded that, in alleging that the city had issued the license in violation of the mandatory minimum insurance requirement of the city's ordinance, the plaintiff's complaint had alleged a duty and its breach, and that the trial court had therefore erred in dismissing the complaint.[11] *Id.* at 414.

The court's discussion in *Brennen* is couched in traditional common-law negligence terms that have undergone modification in Oregon,[12] *see Towe v. Sacagawea, Inc.*, 357 Or 74, 86, 347 P3d 766 (2015), but one of the opinion's

---

[10] The court reasoned that, having concluded that the duty arises from principles of common-law negligence,

"[i]t is immaterial whether or not the licensing agent intended to assume a duty in this case, just as it would be immaterial whether or not a private individual intended to assume a duty in doing a particular act. Virtually all government activities have their ultimate source in some legislative enactment, and to adopt defendant's theory would, in effect, restore the doctrine of sovereign immunity, which has been abolished by statute in Oregon. ORS 30.265."

*Id.* at 407.

[11] The court explicitly rejected as inconsistent with the OTCA the view that a public entity should escape liability because the duty to enforce an ordinance runs only to the public generally, and not to individual members of the public. 285 Or at 408-10. The court cited William L. Prosser, *Law of Torts* § 56 (4th ed 1971), for the general rule that "one is held to a higher standard of care when he affirmatively acts than when he fails to act at all." *Id.* at 409.

[12] Under the Supreme Court's contemporary common-law negligence jurisprudence, "the more traditional duty-breach and proximate cause analyses * * * are subsumed in the question whether the defendant's conduct resulted in a reasonably foreseeable and unreasonable risk of harm to a protected interest of the kind that the plaintiff suffered," *Piazza v. Kellim*, 360 Or 58, 72, 377 P3d 492 (2016), "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty." *Chapman v. Mayfield*, 358 Or 196, 205, 361 P3d 566 (2015) (citing *Fazzolari*, 303 Or at 17).

underlying precepts remains good law: A municipality's statutory or regulatory obligation can define or limit the municipality's duty and standard of care. *See Abraham,* 350 Or at 40; *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 17, 734 P2d 1326 (1987); *see also Boyer v. Salomon Smith Barney,* 344 Or 583, 595, 188 P3d 233 (2008) ("[O]utside source[s] of law" such as "industry standards, statutes, or regulations, could * * * provide a basis in law for liability" in a negligence action.); *Bellikka v. Green,* 306 Or 630, 650, 762 P2d 997 (1988) (in a common-law negligence claim, a statute might indicate standards of care that the defendant should have met); *Nearing v. Weaver,* 295 Or 702, 707, 670 P2d 137 (1983) (statutory requirement for enforcement of restraining orders by police imposed specific duty, the breach of which was actionable in tort); *see also Eclectic Investment, LLC v. Patterson,* 261 Or App 457, 478, 323 P3d 473 (2014), *aff'd on other grounds,* 357 Or 25, 346 P3d 468, *modified on recons,* 357 Or 327, 354 P3d 678 (2015) (citing *Brennen* and holding that a county licensing agent who had responsibility for inspecting and permitting excavation had to perform that duty so as to avoid creating a foreseeable risk of harm to others); *Dykeman v. State,* 39 Or App 629, 633-34, 593 P2d 1183 (1979) (building code requirement for issuance of permits by building inspector gave rise to duty to exercise reasonable care in processing of permit application to avoid foreseeable risk of harm from issuance and subsequent revocation of permit). Plaintiff contends that that precept, applied here, requires the conclusion that the city and the city's building inspector, having undertaken the enforcement of the building code, had a duty to exercise reasonable care to perform that function so as to avoid creating a foreseeable risk of harm to plaintiffs.

Plaintiffs' reliance on *Brennen* is misplaced. Unlike in *Brennen,* in which the court identified a duty derived from a specific statutory responsibility, 285 Or at 412 n 5 (concluding that the city's ordinance imposed a statutory responsibility "to process applications to issue a license only where the applicant satisfied the requirements of the ordinance"), there is no statutory duty here imposed on the city that provides a basis for plaintiffs' claim. *See* ORS 30.260(8) (defining "tort" for purposes of actionable claims against governmental entities

and their agents as a "breach of a legal duty that is imposed by law"). The duty to install a weather barrier belonged to the builder. The city's role in enforcing the building code is carried out through the issuance of permits and inspections. Plaintiffs do not contend that the city improperly issued a building permit because the plans did not comply with the code. Although the building code includes requirements for certain inspections, an inspection for a weather barrier is not among them. And although a city has the option to add other inspections "to ascertain compliance" with the building code, the code does not mandate general inspections for violations or impose administrative consequences for violations that are not subject to inspection.[13] The city's assumption of the administration and general enforcement of the building code with respect to builders does not operate to expand the code enforcement obligations of the city beyond those that are expressly assumed. The record does not include evidence that the city assumed any duty that is not encompassed in the building code.[14] *See Brennen*, 285 Or at 406-07 (ordinance creating licensing requirements created duty to act with reasonable care).

Under those circumstances, we reject the contention that the city had an affirmative duty, the violation of which was actionable in negligence, to undertake inspections not required by the building code or to take action in response to violations of requirements not subject to inspection. *See Indian Creek Development Co. v. City of Hood River*, 203 Or App 231, 237-39, 125 P3d 50 (2005), *rev den*, 340 Or 158 (2006) (holding that city's "ongoing land use application and review processes" did not give rise to a duty of care, distinguishing *Brennen* and *Dykeman* based on absence of a specific duty-creating statute).

Accordingly, we conclude that the trial court did not err in granting the city's motion for summary judgment.

Affirmed.

---

[13] For example, the record does not include evidence that a permit may not be "finaled" or that a certificate of occupancy must be withheld in the absence of a weather barrier.

[14] The certificate of occupancy is not in the record and does not provide a basis on which to conclude that the city undertook in this case to do more than was required by the building code.