Argued and submitted October 13, 2015, reversed and remanded June 7, 2017

Richard W. COURTER
and Gayanne Courter, husband and wife,
*Plaintiffs-Appellants,*

*v.*

CITY OF PORTLAND,
a political subdivision of
the State of Oregon,
*Defendant-Respondent.*

Multnomah County Circuit Court
130507693; A157740

398 P3d 936

Kristian Roggendorf argued the cause for appellants. With him on the briefs was Roggendorf Law LLC.

Terence L. Thatcher, Deputy City Attorney, argued the cause and filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

SERCOMBE, P. J.

Plaintiffs appeal a judgment in favor of defendant City of Portland (the city) dismissing plaintiffs' inverse condemnation claim and their request for declaratory relief under the Declaratory Judgments Act, ORS 28.010 to 28.160. In 2003, the city condemned an easement for the "placement of utilities" beneath an access road on plaintiffs' property, in order to bury pipes to connect a water tank to the city's water system. According to plaintiffs, the city agreed during the 2003 condemnation trial to bury the pipes at a depth of at least 18 feet but later buried them as shallow as four feet. Plaintiffs assert that the city therefore exceeded the scope of its easement and effected a taking without just compensation in violation of Article I, section 18, of the Oregon Constitution.[1] On the city's motion, the trial court granted summary judgment on the ground that plaintiffs' claims were not ripe for adjudication. Plaintiffs raise two assignments of error on appeal, first, arguing that the trial court erred in implicitly concluding that the city was not barred from defending the action under the doctrine of judicial estoppel and, second, asserting that the trial court erred in concluding that their claims were not justiciable. In response, the city contends that the case is not ripe and that judicial estoppel does not apply. The city also raised three alternative bases for affirmance, including an argument that a court cannot issue a declaratory judgment construing the terms of a prior judgment.[2] We conclude that the case is ripe for adjudication and that a declaratory judgment action

---

[1] Article I, section 18, provides, in part, that "[p]rivate property shall not be taken for public use * * * without just compensation[.]"

[2] In addition, the city also asks us to affirm because, according to the city, the doctrine of claim preclusion bars plaintiffs' claims and because plaintiffs' claims fail on their merits. Under the "right for the wrong reason" doctrine, a reviewing court may affirm the ruling of a trial court on an alternative basis not relied on by the trial court when the record supports that alternative basis for affirmance, the court's actual ruling is consistent with the view of the evidence under the alternative basis for affirmance, and the record materially is the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). Aside from the city's argument about the court's jurisdiction to issue a declaratory judgment interpreting a prior judgment, we decline to address its alternative bases for affirmance, because they potentially involve a tangle of factual issues and would be more appropriately resolved in the first instance by the trial court.

can, under these circumstances, be brought to construe the prior judgment. Therefore, we reverse and remand.[3]

On appeal from a trial court's grant of a motion for summary judgment, "we view the evidence and all reasonable inferences in the light most favorable to" the nonmoving party "for the purpose of determining whether there is no genuine issue of material fact and the [moving party] is entitled to judgment as a matter of law." *Farnworth v. Rossetto*, 285 Or App 10, 12, 396 P3d 272 (2017).

This case concerns a dispute about the results of a 2003 condemnation trial. At that time, the city exercised its power of eminent domain to acquire property owned by plaintiffs in order to build a water tank and associated facilities. Following the trial, a jury reached a verdict awarding plaintiffs $596,000 in just compensation for the taking. The trial court then entered a judgment, which granted the city a fee interest in 1.6 acres of plaintiffs' land and "an easement for ingress and egress and the placement of utilities" along an access road on plaintiffs' property.

Subsequently, the city constructed the water tank and buried pipes to connect the tank to the city's water system. The city buried the pipes at depths ranging from four to 15 feet beneath the access road. According to plaintiffs, by doing so, the city exceeded the scope of its easement, which, plaintiffs contend, required them to bury their pipes at a depth of at least 18 feet. Plaintiffs subsequently filed a complaint raising a claim of inverse condemnation and a request for declaratory relief.

In their complaint, plaintiffs alleged that, at the 2003 trial, the city represented—through its witnesses and through counsel—that the pipes would be buried at a depth of at least 18 feet, and that, if they were buried at that depth, they would not interfere with plaintiffs' ability to develop their property in the future. According to plaintiffs, now, before they can develop the property, they will have to dig up and move the pipes at great expense. Furthermore, plaintiffs asserted that, during the 2003 trial, they were barred

---

[3] Our disposition obviates the need to address plaintiffs' judicial estoppel argument.

from arguing that they should receive remainder damages related to the placement of the pipes as a result of the city's representations and the trial court's instructions to the jury.

With respect to their inverse condemnation claim, plaintiffs alleged:

"The substantial interference with the reasonable use and enjoyment of Plaintiffs' property, and/or the City's exceeding the physical limits of the utilities easement granted in the 2003 trial by placing pipes less than 18 feet below the prior elevation of the access road represents a taking of Plaintiffs['] property for which they are entitled to just compensation under Article I, Section 18[,] of the Oregon Constitution.

"* * * * *

"The City's substantial interference with [plaintiffs'] property and exceeding of the scope of the easement resulted in a taking of [plaintiffs'] property, or alternatively damages to the remainder of their property, preliminarily valued on information and belief at not less than $400,000, the exact amount to be determined by the jury at the time of trial."

In their request for declaratory relief, plaintiffs contended:

"Defendant City asserted through witnesses under oath and counsel acting as an officer of the court that its taking of Plaintiffs' property in the 2003 trial was to be limited to pipes buried in their access easement not less than 18 feet deep. Plaintiffs were prevented from introducing evidence that the City would fail to meet this obligation. Therefore, the City succeeded in its argument to exclude evidence from Plaintiffs on the City's potential for mendacity, and successfully represented to the Court and the jury that Plaintiff's damages should not include any amount related to the placement of pipes at this 18 foot depth.

"* * * * *

"Plaintiffs pray this Court for a declaration that the easement granted to the City in the supplemental general judgment in *City of Portland v. Courter,* Multnomah County Circuit Court Case No. 9810-07438, included the restriction that any utilities 'placed' pursuant to that easement

be at a depth not less than 18 feet from the surface of the access easement as it existed on November 21, 2003. Plaintiffs further pray for a declaration that the City is judicially estopped from claiming that the easement means anything to the contrary of the testimony and representations offered by the City in that trial."

The city moved for summary judgment, arguing, *inter alia*, that plaintiffs' claims were not ripe for adjudication. The city contended that plaintiffs had "neither alleged nor can they show any actual or imminent injury in fact." The city asserted that any threat of injury to plaintiffs was as yet "contingent on future events of a hypothetical nature," because a court could not adjudicate whether they were harmed by the placement of the pipes until plaintiffs successfully rezoned their property and obtained approval for a development plan that required them to move the pipes. Moreover, the city argued that such a plan might never be approved, because it was unlikely that plaintiffs could devise a development plan that would both require them to move the pipes and comply with the city code.

Plaintiffs responded that their inverse condemnation claim was ripe because the city's decision to "break its word and bury the pipes as shallow as four feet" led to an "entirely new and distinct taking" that was "real and present." Plaintiffs further asserted that "[i]t [was] not hypothetical or speculative that the City buried the pipes under the access road at as little as four feet." According to plaintiffs, the value of that new easement and the "decreased property value to the remainder [c]ould be established by expert appraisers" in the same manner as the remainder damages for any other taking. Plaintiffs argued that their request for declaratory relief was ripe for essentially the same reason—there was a present controversy over the meaning of "easement for *** the placement of utilities" in the 2003 judgment as a result of the city's "burial of the pipes as shallow as four feet below the road."

Following oral argument by the parties, the trial court granted the city's motion. The court explained that, "[a]s far as I can see, [plaintiffs] don't have a right to get damages until they can prove that they are going to be

subject to the damages." According to the court, "The fact that the damages may have *** occurred at the time they put the pipes at four feet rather than 18 feet, doesn't prove that there are any damages, because there is no evidence that *** all they want to do is develop it." The court continued, "My interpretation is, can they develop it? And if I say I don't know, at this point, I don't know whether they can develop it, number one. Nor do I know whether they will develop it, then I can't see how the case is ripe." Thus, the court concluded that the claim was not ripe, granted the city's motion, and entered an order and general judgment dismissing plaintiffs' claims.

On appeal, plaintiffs contend that both of their claims are ripe for adjudication. According to plaintiffs, the inverse condemnation claim is ripe because a takings claim based on a permanent physical occupation of property is justiciable as soon as the government intrudes on that property. They assert that their claim therefore became ripe as soon as the city buried its pipes outside the scope of its easement. Similarly, plaintiffs argue that their declaratory judgment action is ripe for adjudication, because the pipes presently infringe on their property rights. In response, the city reiterates its arguments that both of plaintiffs' claims are not ripe, because there are several steps that plaintiff must take—including rezoning their property and securing approval of a development plan—before a court can determine whether the placement of the pipes interferes with their ability to develop their property.[4]

---

[4] The city also asserts, essentially, that plaintiffs did not preserve their appellate ripeness arguments, because they did not base their claims on a taking-by-physical-occupation theory in the trial court. Rather, according to the city, plaintiffs relied solely on a theory that the placement of the pipes constituted a "substantial interference" with their future ability to develop their property and, therefore, cannot argue on appeal that their claims became ripe at the time the pipes were buried. The city is mistaken. Plaintiffs' complaint alleged both that the city's actions led to "substantial interference with the reasonable use and enjoyment of [their] property *and/or [that] the City's exceeding of the physical limits of the utilities easement granted in the 2003 trial* by placing pipes less than 18 feet below the prior elevation of the access road." (Emphasis added.) With respect to their declaratory judgment action, plaintiffs requested a declaration that the city's easement contained a restriction requiring the pipes to be buried at a depth of at least 18 feet. Furthermore, plaintiffs argued in their response to the city's motion for summary judgment that the city effected a taking though the physical placement of the pipes in its response to the city's motion for summary

"Ripeness" is one aspect of the broader principle of justiciability. To be justiciable, a case must present "'an actual and substantial controversy between parties having adverse legal interests.'" *Weber v. Oakridge School District 76*, 184 Or App 415, 424, 56 P3d 504 (2002), *rev den*, 335 Or 422 (2003) (quoting *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982)). There are "two irreducible requirements for justiciability: The dispute must involve present facts, and it must be a dispute in which a prevailing plaintiff can receive meaningful relief from a losing defendant." *Hale v. State of Oregon*, 259 Or App 379, 384, 314 P3d 345 (2013), *rev den*, 354 Or 840 (2014). More particularly, a claim is ripe for adjudication if it "involves present facts, as opposed to future events of a hypothetical nature." *Dept. of Human Services v. K. L. R.*, 235 Or App 1, 4, 230 P3d 49 (2010).

We begin with plaintiffs' inverse condemnation claim. "Inverse condemnation" is neither a "constitutional nor a statutory term" but is, instead, "the popular description of a cause of action against a government defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Suess Builders v. City of Beaverton*, 294 Or 254, 258 n 3, 656 P2d 306 (1982) (internal quotation marks omitted). "The three elements of an inverse condemnation claim are (1) a taking of private property (2) by an agency or subdivision of the state having the power of eminent domain, and (3) the property must be property that is subject to being taken for a public use." *City of Ashland v. Hoffarth*, 84 Or App 265, 270, 733 P2d 925, *rev den*, 303 Or 483 (1987).

Plaintiffs' inverse condemnation claim is based on its allegation that the city (a subdivision of the state with the power of eminent domain) took plaintiffs' property for

judgment. As noted above, regarding their inverse condemnation claim, plaintiffs asserted that the "new taking is real and present" because "[i]t is not hypothetical or speculative that the City buried the pipes under the access road at as little as four feet." And, with respect to their request for a declaratory judgment, they contended that their claim was ripe because the city "has completed the burial of pipes as shallow as four feet below the road."

public use by exceeding the scope of its easement for the "placement of utilities." Put another way, plaintiffs allege that burying the pipes at a depth less than 18 feet was a taking of soil underneath the access road, because the city's easement was limited to the placement of utilities at a depth of at least 18 feet below ground.

Under Article I, section 18, whenever the government permanently physically occupies the property of a citizen, that physical occupation is a taking. *See Ferguson v. City of Mill City*, 120 Or App 210, 212, 214-15, 852 P2d 205 (1993) (ordinance requiring "private property owners to grant easements" to the city for placement of sewer pipes was a taking because it was a permanent physical occupation of the plaintiff's property); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 US 419, 438, 102 S Ct 3164, 73 L Ed 2d 868 (1982) (concluding that, under the Fifth Amendment takings clause, a state law that required landlords to allow cable companies to install cable television equipment on their property was a taking because it involved a permanent physical occupation of private property); *see also Hoeck v. City of Portland*, 57 F3d 781, 787 (9th Cir 1995) (noting that "Oregon Law is identical to the Fifth Amendment" regarding permanent physical occupation of property). Additionally, a permanent physical occupation of property is a taking, even if the physical occupation causes the property owner only minimal harm or is of great benefit to the public. *Ferguson*, 120 Or App at 215.

Because it is based on an allegation of a permanent physical occupation of plaintiffs' property by the city, plaintiffs' inverse condemnation claim is ripe. *Cf. Curran v. ODOT*, 151 Or App 781, 786-87, 951 P2d 183 (1997) (explaining that there is no issue as to the ripeness of an inverse condemnation claim where "an actual property interest has been acquired"); *Nelson v. City of Lake Oswego*, 126 Or App 416, 422, 869 P2d 350 (1994) (explaining that, where an inverse condemnation claim is based on the acquisition of the plaintiff's property, the claim is inherently ripe because "the only question is whether what *has* occurred *is* a taking" (emphases in original)). No future events need to occur before a court can adjudicate whether there has been a taking. Instead, plaintiffs' inverse condemnation claim is based

on present, nonhypothetical facts: The pipes are already in the ground. Thus, the only question is whether the city's actions constitute a taking—*i.e.*, whether the city has *actually exceeded* the scope of its easement.

As discussed above, the city responds that plaintiffs' claim is not ripe, because there are several steps that plaintiffs must take before they can develop their property. And, as noted, the trial court concluded that the claim is not ripe because a court cannot determine whether the development that plaintiffs contend will be affected by the pipes is likely or even possible and, thus, cannot assess the extent of the resulting damages if the city exceeded the scope of its easement. We disagree. First, if there has in fact been a taking of the easement, plaintiffs are entitled to just compensation for damages resulting directly from the physical occupation of their property. Moreover, the extent of the loss of value to the remainder of the property caused by the taking of the easement can presently be assessed and is a matter for a jury to determine at trial. *See, e.g., Dept. of Trans. v. Lundberg*, 312 Or 568, 574, 825 P2d 641 (1992) ("In the case of a partial taking of property, the measure of damages is the fair market value of the property acquired plus any depreciation in the fair market value of the remaining property caused by the taking."). If plaintiffs, for some reason, cannot produce adequate evidence to establish the extent of the remainder damages attributable to their lost ability to develop their property, that might limit the appropriate award of just compensation. *See ODOT v. Fullerton*, 177 Or App 254, 262, 34 P3d 1180 (2001) ("[A]n award of compensation must be based on realistic, nonspeculative, and non-remote evidence."). That would not, however, render their claim unripe. If the city's pipes are occupying plaintiffs' property, there has been a taking, and nothing else must occur before a court can adjudicate that issue. *See Ferguson*, 120 Or App at 214-15. The inverse condemnation claim is ripe.

Turning to plaintiffs' request for a declaratory judgment, we conclude that plaintiffs' declaratory judgment action is ripe for much the same reason as plaintiffs' inverse condemnation claim. As noted, the "irreducible requirements" of justiciability are that the dispute must "involve

present facts, and it must be a dispute in which a prevailing plaintiff can receive meaningful relief from a losing defendant." *Hale*, 259 Or App at 384. Plaintiffs' request for a declaration is based on the same "present facts" as their inverse condemnation claim—the presence of the pipes in what they allege to be their property. Further, the court can provide meaningful relief to the prevailing party, because issuing a declaration construing the meaning of the city's easement for the "placement of utilities" will finally resolve the controversy. Either plaintiffs are correct about the scope of the city's easement, and the city has violated their property rights, or they are incorrect, and the city was entitled to bury the pipes as it did.

We now address the city's alternative argument that plaintiffs' declaratory judgment action should have been dismissed because trial courts do not have jurisdiction under the Declaratory Judgments Act to issue declarations construing the meaning of a prior judgment entered by a circuit court. The city argues that courts cannot entertain declaratory judgment actions to construe prior judgments because "judgments" are not among the writings listed in ORS 28.020[5] and are, therefore, outside the scope of the act. The city also contends that we held that prior judgments are outside the scope of the act in *Oregonian Publishing Co., LLC v. Waller*, 253 Or App 123, 293 P3d 1046 (2012), *rev den*, 353 Or 714 (2013).

The Declaratory Judgments Act confers broad authority on the courts to grant declaratory relief, providing that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." ORS 28.010. The breadth of a court's authority

---

[5] ORS 28.020 provides:

"Any person interested under a *deed, will, written contract or other writing constituting a contract*, or whose rights, status or other legal relations are affected by a *constitution, statute, municipal charter, ordinance, contract or franchise* may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter; ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

(Emphases added.)

under the act is emphasized by ORS 28.120, which provides that "[t]his chapter is declared to be remedial. The purpose of this chapter is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered."

Other provisions of the act discuss specific sources of "rights, status, and other legal relations" for which parties may obtain declarations. *See* ORS 28.020 (providing that an "interested" person may obtain a declaration of a "deed, will, written contract or other writing constituting a contract" and a person whose "rights, status or other legal relations are affected" may obtain a declaration of "a constitution, statute, municipal charter, ordinance, contract or franchise"); ORS 28.030 (providing that a "contract may be construed either before or after there has been a breach thereof"); ORS 28.040 (providing for declarations of rights or legal relations with respect to trusts and estates). Additionally, ORS 28.050 provides that "[t]he enumeration in ORS 28.010 to 28.040 does not limit or restrict the exercise of the general powers conferred in ORS 28.010, in any proceedings where declaratory relief is sought, in which a judgment will terminate the controversy or remove an uncertainty."

Although it is at least debatable that the judgment in this case, which conveys an interest in real property from plaintiffs to the city, is sufficiently analogous to a "deed" for ORS 28.020 to apply, the city is nevertheless incorrect that courts lack the authority to construe prior judgments because they are not listed in ORS 28.020. Rather, as we have previously held, ORS 28.010 and ORS 28.050 give courts the power to declare the rights, status, and other legal relations between the parties to a declaratory judgment action "no matter what source of law gives rise to those rights or obligations." *Chernaik v. Kitzhaber*, 263 Or App 463, 474, 328 P3d 799 (2014). As the Supreme Court explained in *In re Estate of Ida Dahl*, 196 Or 249, 253-54, 248 P2d 700 (1952), by providing that the "enumeration in ORS 28.010 to 28.040 does not limit or restrict the exercise of the general powers conferred in ORS 28.010," ORS 28.050 "completely devastate[s]" the argument that the sources of legal rights,

statuses, and relations are limited to the writings enumerated in the act. The text of ORS 28.020 therefore does not support the city's contention that a prior judgment cannot be the subject of a declaratory judgment action.

The city also asserts that prior judgments are specially excluded from the scope of the act. When it promulgated the Declaratory Judgments Act, the legislature adopted the Uniform Declaratory Judgments Act. *Pike v. Allen International Ltd.*, 287 Or 55, 58, 597 P2d 804 (1979). There is a split in authority among other jurisdictions that have adopted that model legislation as to whether courts may issue declarations construing past judgments. *Compare Carver v. Heikkila*, 465 NW 2d 183, 185 (SD 1991) ("The correct construction of a prior judgment or order is normally an appropriate subject for a declaratory judgment action."), *with Speaker v. Lawler*, 463 SW 2d 741, 742 (Tex Civ App 1971) (noting the divide in authority, but "declin[ing] to extend" the provisions of the act to allow for the construction of a prior judgment). *See also* 26 CJS *Declaratory Judgments* § 51 (2017) (explaining that "[a] declaratory judgment action may not be used for purposes of a collateral attack to challenge the validity, or secure the modification, of a judgment, decree, or order of a court of competent jurisdiction, but authorities differ as to whether such action may be used to secure a construction of a judgment or decree"). Jurisdictions that allow for the construction of prior judgments distinguish between proceedings to interpret ambiguous terms in a judgment, which they permit, and those to modify or set aside the prior judgment, which they do not. *Id.*; *see also Carver*, 465 NW 2d at 185 ("While a declaratory judgment obviously cannot alter the terms of a final judgment, it may clarify the terms of the order if they are ambiguous." (Internal quotation marks omitted.)).

The city, relying on *Oregonian Publishing Co., LLC*, 253 Or App 123, contends that the Oregon courts have adopted the position that courts may never construe prior judgments under the act. In that case, the plaintiff had requested that the juvenile court release a copy of a shelter care order in a juvenile dependency case. After the juvenile court denied that request, the plaintiff brought an action in

circuit court seeking, among other things, a declaration that the shelter care order was available for public inspection. The circuit court agreed and issued a declaratory judgment to that effect. *Id.* at 125.

On appeal, we reversed that judgment and concluded that a declaratory judgment action was not available to challenge the juvenile court's decision. We explained that, under Article VII (Original), section 9, of the Oregon Constitution,[6] a circuit court has no authority to "review" the decisions of another circuit court, unless that authority is otherwise provided by the constitution or by statute. *Id.* at 134. We reasoned that the declaratory judgment statutes do not provide that authority, because a "[d]eclaratory judgment is not a substitute for a new trial or an appeal, and it will not lend itself for use as a collateral attack on a prior judicial decision by a court of competent jurisdiction." *Id.* As we explained, the plaintiff was attempting to use its declaratory judgment action, effectively, as a substitute for an appeal, because, "[i]n bringing this action, plaintiff eschewed a well-established mechanism for seeking review of [the juvenile court's] decision by a higher court, not by another circuit court judge," which was, in that context, mandamus review. *Id.* at 136. Thus, we held that there was "nothing in the pertinent statutory text, context, or legislative history to suggest that * * * the Declaratory Judgments Act was intended to supplant or supplement that well-established means of review." *Id.*

The city correctly points out that *Oregonian Publishing Co., LLC*, quotes sweeping language from the Arizona Supreme Court. *See id.* (stating that Arizona's declaratory judgment statute "'does not expressly or by implication authorize a court to entertain a proceeding to determine any questions of the construction or validity of a judgment or decree of a court of competent jurisdiction, or to declare the rights or legal relations of interested parties thereunder'" (quoting *Shattuck and Shattuck*, 67 Ariz 122, 192 P2d 229, 235 (1948))). However, our holding is narrower

---

[6] Article VII (Original), section 9, provides, "All judicial power, authority, and jurisdiction not vested by this Constitution, or by laws consistent therewith, exclusively in some other Court shall belong to the Circuit Courts, and they shall have appellate jurisdiction, and supervisory control over the County Courts, and all other inferior Courts, Officers, and tribunals."

than that quotation suggests: We held only that the circuit court had no authority to hear a declaratory judgment action where the action is used as a substitute for the "well-established" means of review for the juvenile court's judgment. *Oregonian Publishing Co., LLC*, 253 Or App at 136.

This case, where plaintiffs request a declaration construing a purportedly ambiguous term in a prior judgment, is distinct from *Oregonian Publishing Co., LLC*. An action to construe an ambiguous term in a prior judgment is not an attempt to use the declaratory judgment action as "a substitute for a new trial or an appeal" or as a collateral attack on the judgment. In this context, a plaintiff does not request a declaration that the prior judgment is erroneous and should be modified or set aside. Therefore, an action to construe an ambiguous term does not raise the constitutional problem identified in *Oregonian Publishing Co., LLC*, because it is not a request for "review" by one circuit court of a prior judgment entered by another circuit court. Rather, it is a request for a declaration determining or clarifying the parties' legal interests under the prior judgment.

Accordingly, an action to construe an ambiguous term in a prior judgment fits squarely within the court's authority under the Declaratory Judgments Act "to declare rights, status, and other legal relations," ORS 28.010, and to "settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations," ORS 28.120. Furthermore, where courts have the opportunity to resolve uncertainty or insecurity with respect to the parties' rights, we are obliged to "liberally construe[]" the act. ORS 28.120. Consequently, we conclude that the circuit courts have jurisdiction to issue declarations construing ambiguous provisions in prior judgments. Because plaintiffs' request for a declaratory judgment is based on their contention that the phrase "easement * * * for the placement of utilities" is ambiguous, the trial court has jurisdiction under the Declaratory Judgments Act.[7]

For the foregoing reasons, we conclude that plaintiffs' inverse condemnation and declaratory judgment claims

---

[7] We express no opinion on the correctness of plaintiffs' contention that the judgment is ambiguous.

are ripe for adjudication. We also conclude that a court may construe the meaning of the 2003 judgment under the Declaratory Judgments Act. Therefore, the trial court erred in granting the city's motion for summary judgment.

Reversed and remanded.