No. 970          November 13, 2025          725

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

PERMA TREAT, INC.,
a Nevada corporation,
*Plaintiff-Appellant,*

*v.*

TOMA INVESTMENTS, LLC,
an Oregon limited liability company,
*Defendant-Respondent.*

TOMA INVESTMENTS, LLC,
an Oregon limited liability company,
*Third Party Plaintiff-Respondent,*

*v.*

Terry RENNIE,
and individual;
Perma Treat, Inc., a Nevada corporation;
and Perma Treat, Inc., an Oregon corporation,
*Third Party Defendants-Appellants.*

Deschutes County Circuit Court
17CV18278; A179387

Alicia N. Sykora, Judge.

Argued and submitted June 6, 2024.

Megan K. Burgess argued the cause for appellants. Also on the briefs was Peterkin Burgess.

Andrew D. Glascock argued the cause for respondent. Also on the brief was Glascock, Street, Waxler LLP.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Nakamoto, Senior Judge.*

NAKAMOTO, S. J.

Supplemental judgment affirmed.

_____
   *  Nakamoto, Senior Judge, *vice* Jacquot, Judge.

**NAKAMOTO, S. J.**

In accordance with an arbitration award, the trial court entered a general judgment that included declaratory relief in favor of plaintiff Perma Treat, Inc. After additional disputes implicating parts of that judgment, defendant Toma Investments, LLC returned to the trial court and filed a petition for "further relief" under ORS 28.080, part of the Oregon Uniform Declaratory Judgments Act. The trial court granted defendant's petition and denied plaintiff's cross-petition for further relief based on the same statute. The trial court also allowed defendant to amend one of its pleadings to claim attorney fees and ultimately awarded defendant fees. Plaintiff appeals from the resultant supplemental judgment.

In its first assignment of error, plaintiff challenges the scope of the trial court's authority under ORS 28.080 and the manner in which the court exercised its authority. We hold that the trial court acted within its statutory authority pursuant to ORS 28.080 when it construed the general judgment and that the trial court did not err in its exercise of that authority by granting defendant's petition.

In plaintiff's second assignment of error, plaintiff contends that the trial court erroneously denied its cross-petition for further relief under ORS 28.080. Although plaintiff argues that it established that defendant was violating the terms of the general judgment and a trademark licensing agreement, we hold that the trial court did not err in concluding otherwise.

Plaintiff's third assignment of error concerns the trial court's award of attorney fees to defendant for opposing plaintiff's cross-petition. We reject plaintiff's argument that the trial court abused its discretion when it allowed defendant to amend its pleading to assert a right to fees after trial. Accordingly, we affirm the supplemental judgment entered by the trial court.

## I. FACTS

The facts are primarily procedural, and, as needed, we relate some of the trial court's findings of fact, which are unchallenged by plaintiff and are supported by the record.

This action arose from the sale of defendant's Perma Treat business, which was providing indoor and outdoor hard surface cleaning and sealing with products owned and sold by a third party, Shore Corporation. Defendant sold the Perma Treat business to Rennie, Inc. in 2015. Later that year, Rennie, Inc. assigned its rights in the agreement to plaintiff Perma Treat, Inc. because Rennie, Inc.'s principal, Terry Rennie, wanted to set up a franchise business model.

The purchase and sale agreement provided that Rennie, Inc. obtained rights to provide services, to sell and use the processes and materials of the Perma Treat business, and to market the business nationally. Defendant agreed not to compete with Rennie, Inc. but retained a license to provide services in parts of Washington and Oregon that the parties refer to as the Portland metropolitan area.

Due to disputes about performance of the agreement, plaintiff petitioned the trial court to order defendant to engage in binding arbitration with plaintiff. Those parties—as well as third-party defendants Terry Rennie and a related Oregon corporation—arbitrated their disputes. Generally speaking, plaintiff contended that defendant was in breach by competing with plaintiff. In 2018, the arbitrator issued an opinion and award, a supplemental award, and an amended supplemental award, with plaintiff largely prevailing.

The trial court then entered a general judgment that incorporated the arbitration awards, including monetary, injunctive, and declaratory relief. Among other things, the judgment enjoined defendant and individuals acting with defendant from using a certain logo, selling Perma Treat products outside defendant's territory, and selling competing products. The judgment further required defendant to execute documents concerning ownership and use of the Perma Treat trademark, including a Trademark License Agreement. The license agreement provided that defendant "shall not use, sell, or distribute any competing (i.e., non-Perma Treat branded and labeled) natural and/or man-made stone cleaning or sealing products (i.e., Stone Shield, Shore Best, Dura Shield, Dura Treat, Dura Seal, Dura Sealer or Dura Perm or any other named products)." Similarly, the judgment enjoined defendant from "selling any related/

equivalent products within the Portland Metropolitan Area (including, without limitation, Stone Shield, Shore's Best, Dura Treat, Dura Treat Portland, Dura Shield, Dura Shield Portland, Dura Sealers U.S. or any other competitive labeled products)" and from "developing, marketing, branding, labelling or selling any products which compete with the Perma Treat Business."

The judgment also contained a dozen declarations that plaintiff had sought. Among the most pertinent on appeal are declarations concerning plaintiff's right to "obtain Perma Treat Products directly from Shore Corporation or any other source" and a definition of "Perma Treat Products" as used in the purchase and sale agreement. The term "Perma Treat Products" was declared to be "those products that perform the same function as the products obtained from Shore Corporation in the treatment of hard surfaces," but excluding stain. Another declaration provided that defendant's contract right to purchase Perma Treat products "directly from suppliers" would terminate when defendant's principals, James and Marla Toma, no longer owned their company.

In 2020, defendant petitioned the trial court for further relief under ORS 28.080 after plaintiff informed defendant that it could not purchase or use Perma Treat products from Shore. Rather, plaintiff insisted, defendant had to buy and use products from plaintiff's new supplier, Buddyjack, LLC. Buddyjack was owned and operated by Terry Rennie.

Defendant sought declarations that Buddyjack was not a legitimate supplier of Perma Treat products pursuant to the parties' agreements and that defendant could continue to purchase Perma Treat products from Shore or another third party if plaintiff and Buddyjack did not supply Perma Treat products. Defendant relatedly sought an injunction requiring plaintiff to obtain a proper supplier of Perma Treat products and to provide contact information that would allow defendant to purchase Perma Treat products directly from that supplier.

Plaintiff opposed defendant's petition and sought its own "further relief" in a cross-petition. Plaintiff alleged that

defendant had violated parts of the judgment and breached underlying agreements by impermissibly competing against plaintiff. In the general judgment, the court had declared that plaintiff was the "sole owner and in control of the intellectual property" of the Perma Treat business, and plaintiff contended that defendant was improperly using a logo. Plaintiff also alleged that defendant was continuing to compete with plaintiff by performing hard surface cleaning and sealing using "Dura Treat" in various business names while purchasing "Perma Treat" labeled products from Shore. Plaintiff sought an injunction that, among other things, terminated the license agreement and barred defendant and those acting in concert with it from all hard surface cleaning and sealing operations anywhere in the United States.

Thus, each of the parties asked the trial court to determine whether its actions and those of its opponent complied with or violated specific terms of the original judgment and to issue either further declaratory or injunctive relief. In 2021, after a multiday show cause hearing, the trial court issued a detailed letter opinion. Concluding that it had authority under ORS 28.080, the court construed provisions in the judgment and made findings.

The court viewed the primary issue that the parties had presented as whether defendant had a contractual right to purchase Shore products:

> "[Plaintiff]/Rennie contend * * * that the General Judgment 'expressly took away' [defendant's] contract rights to purchase Shore products from Shore. [Defendant], in contrast, concluded that the General Judgment allows [it] to buy the same Shore product [it] has used for many years, directly from Shore or from [plaintiff] for cost."

The court concluded that the judgment did not permit plaintiff to require defendant to purchase products only from Buddyjack when those products were not "Perma Treat products," that is, products that "perform the same function" as Shore products. The court summarized that, by overwhelming evidence, defendant had established that the products from Buddyjack did not perform the same function as Shore's, and so were not "Perma Treat products" as

defined in the general judgment.[1] In addition, the trial court construed the judgment as permitting defendant to use Shore as its supplier of Perma Treat products, because the judgment by its terms stated that defendant had the right to purchase "directly from suppliers" of Perma Treat product. The court found support for its construction of the judgment from the terms of the purchase and sale agreement itself. In sum, the trial court rejected plaintiff's argument that it "absolutely has the right to control the supplier of Perma Treat labeled products." The court agreed with defendant that it was entitled to the relief sought in its petition.

As for plaintiff's cross-petition, the trial court determined that it was unsupported by the evidence and had little merit. For example, the court found that defendant used "Dura Treat" products for work on wood decks, not on hard surfaces; that defendant had occasionally mistakenly used old paperwork containing old logos; and that defendant was not competing with plaintiff through its assumed business names. The court concluded both that defendant was permitted to buy product from Shore and was not improperly competing with plaintiff or violating the trademark licensing agreement.

Initially, the trial court did not permit an award of attorney fees. In denying relief on the cross-petition, the court declared that each party "is responsible for its own fees and costs." But before submitting a form of supplemental judgment to the trial court, defendant petitioned the court for an award of attorney fees for opposing plaintiff's cross-petition, even though it had failed to plead a basis for a right to fees. After the court denied the petition, defendant moved for leave to amend its opposition to plaintiff's cross-petition to assert a right to fees under the trademark licensing agreement. Ultimately, the trial court granted defendant leave to allege that the contract provision provided for an award of fees and, over plaintiff's objections, awarded defendant its fees. The trial court then entered the supplemental

---

[1] Among other things, the court credited evidence that Buddyjack's product was not water-resistant, took longer to cure than the Shore product, and was not proved to be food-safe for surfaces like kitchen counters, in contrast to the Shore product. The court also credited evidence that the labeling on Buddyjack products was variously false or inaccurate and that plaintiff did not and apparently could not provide safety data sheets to establish what components and chemicals were used in the product.

judgment containing declarations and a money award that plaintiff challenges on appeal.

## II.   DEFENDANT'S PETITION

A.   *The Trial Court's Authority under ORS 28.080*

In its first assignment of error, plaintiff contends that the trial court entered a supplemental judgment awarding declaratory relief in defendant's favor that erroneously modified the general judgment, contrary to the limited relief permitted under ORS 28.080. Plaintiff also argues that the declaratory relief that the trial court awarded contradicted the general judgment and was outside the scope of relief that defendant had sought in its petition.

We begin with the trial court's conclusion concerning its authority under ORS 28.080. The court concluded based on Oregon case law that it had authority to rule on the relief defendant had requested because the relief sought was "necessary and proper," was based on the general judgment that included declaratory relief, and encompassed relief permitted under the statute. We review the trial court's determination for legal error, *see Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or App 553, 582, 152 P3d 940 (2007) (stating that we review legal issues for errors of law), and conclude that the trial court did not err.

Plaintiff's primary argument concerning the trial court's authority under ORS 28.080 is that *Courter v. City of Portland*, 286 Or App 39, 398 P3d 936 (2017), requires the parties to raise an "ambiguity," as understood as a term of art when construing text, before a court can construe a declaratory judgment. Plaintiff argues that, because the judgment was unambiguous,[2] the trial court improperly allowed defendant to seek "further relief" under ORS 28.080 as a means to collaterally attack the judgment.

We first reject that argument because it is inconsistent with the text of ORS 28.080, which states:

---

[2] Plaintiff is correct that the trial court's review of the general judgment was not focused on resolution of an ambiguity. Neither defendant nor plaintiff requested that type of determination, and the trial court expressly concluded that the text of the judgment was unambiguous in permitting defendant to purchase Perma Treat products from Shore.

"Further relief based on a declaratory judgment may be granted whenever necessary or proper. The application thereof shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment to show cause why further relief should not be granted forthwith."

Far from being limited to relief from provisions that are identified as ambiguous in a declaratory judgment, "further relief" is more broadly allowed in ORS 28.080, that is, "whenever necessary or proper."[3]

We also are unpersuaded by plaintiff's reading of *Courter*. In *Courter*, we looked to cases from other jurisdictions that have adopted the Uniform Declaratory Judgments Act of 1922 to determine whether a party can request a declaration construing an allegedly ambiguous term in an earlier judgment through an action under Oregon's declaratory judgment act. We concluded that, although some jurisdictions draw a bright line and categorically disallow further declaratory relief to construe a past judgment, Oregon courts can construe the terms of a judgment and provide declaratory relief. 286 Or App at 51-52. We explained that the declaratory judgments act gives courts "the power to declare the rights, status, and other legal relations between the parties to a declaratory judgment action 'no matter what source of law gives rise to those rights or obligations.'" *Id.* at 50 (quoting *Chernaik v. Kitzhaber*, 263 Or App 463, 474, 328 P3d 799 (2014)). We also reasoned that a party seeking construction of a declaratory judgment is not requesting review of the prior judgment but instead requests "a declaration determining or clarifying the parties' legal interests under

---

[3] We recognize, however, that the "necessary or proper" provision is not an unlimited grant of authority for a trial court to award any relief that it deems fit. For example, in *Samuel v. Frohnmayer*, 308 Or 362, 366, 779 P2d 1028 (1989), the Supreme Court held that the provision did not authorize the trial court to award attorney fees to a party that had not pleaded and proved entitlement to an award under a statute or contract, as required under settled law. Furthermore, we have held that the reach of available relief under Oregon's declaratory judgment act is not so broad that a party can use a declaratory judgment proceeding in the circuit court to challenge and reverse previously granted declaratory relief by that court. *Oregonian Publishing Co., LLC v. Waller*, 253 Or App 123, 133-34, 293 P3d 1046 (2012), *rev den*, 353 Or 714 (2013).

the prior judgment." *Id.* at 53. In sum, *Courter* required a controversy regarding the legal interests of the parties under the general judgment, not a legal "ambiguity" in the judgment.

Other Oregon cases confirm that supplemental relief is permitted under ORS 28.080 when it is based on the declaratory judgment that is the subject of the petition and is necessary or proper to effectuate that judgment. *See, e.g.*, *Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 329 Or 566, 574-75, 994 P2d 112 (1999) (explaining that "[c]oercive, or 'further,' relief, based on a declaratory judgment, is available to parties under ORS 28.080 and that the injunctive relief granted "was appropriate to give effect to the declaration" at issue); *Lowe v. Harmon*, 167 Or 128, 136, 115 P2d 297 (1941) (explaining that the kind of "further relief" that a court may grant includes not only "further declaratory relief" but "an assessment of damages or other coercive relief"); *Dry Canyon Farms v. U.S. National Bank of Oregon*, 96 Or App 190, 194, 772 P2d 1343 (1989) (stating that "the scope of relief under ORS 28.080 is controlled by the underlying declaratory judgment").

Further, we observe that federal and state courts with the same statutory provision permitting "further relief" are in accord that relief designed to effectuate the original declaratory judgment is permitted. For example, in *Horn Hardart Co. v National Rail Passenger Corp.*, 843 F2d 546 (DC Cir 1988), *cert den*, 488 US 849 (1988), the court applied 28 USC section 2202, which permits "[f]urther necessary or proper relief based on a declaratory judgment," and rejected an argument that the district court lacked authority to grant further relief. The court explained that "'further relief' provisions of both state and federal declaratory judgment statutes clearly anticipate ancillary or subsequent coercion to make an original declaratory judgment effective." *Id.* at 548. The court also held that the relief granted was proper because it followed from, and was based on, the district court's original decision and was proper to effectuate the district court's earlier ruling. *Id.* And similarly, the Montana Supreme has interpreted its identical statute this way:

> "The statute enables the District Court to retain juris-
> diction to grant further relief as it deems necessary and
> proper to enforce the declaratory judgment. The supple-
> mental relief should be designed to provide complete relief
> to the parties * * *."

*Goodover v. Lindey's, Inc.*, 246 Mont 80, 82, 802 P2d 1258 (1990).

Defendant's petition in this case is consistent with the relief described in *Courter*: defendant sought a declaration to clarify or determine the parties' legal interests under provisions of the general judgment when the parties disagreed about their meaning. And the relief that the trial court granted to defendant in the supplemental judgment was based directly on declarations in the general judgment, such as defendant's right to purchase Perma Treat Products directly from suppliers and the definition of "Perma Treat Products." No specified "ambiguity" of a term of the judgment was required for defendant to seek further relief or for the trial court to grant relief.

Plaintiff also asserts that, as in *Oregonian Publishing Co.*, defendant's petition and the trial court's ruling embodied a collateral attack on the general judgment. The circumstances in *Oregonian Publishing Co.*, however, are readily distinguishable from those presented here. Despite a judge's earlier decision denying disclosure of an order issued in a juvenile dependency case, the plaintiff in *Oregonian Publishing Co.* sought a contrary declaration from a different judge in the same circuit court. 253 Or App at 133. We held that a declaratory judgment was "unavailable as a remedy" and directed the circuit court to dismiss the action, because a proceeding seeking a declaratory judgment "is not a substitute for a new trial or an appeal, and it will not lend itself for use as a collateral attack on a prior judicial decision by a court of competent jurisdiction." *Id.* at 134, 136.

This case is different. Defendant did not seek reversal of the declarations in the general judgment. Rather, based on plaintiff's newly asserted position that defendant had to use only Buddyjack products and disagreements about how the general judgment applied to defendant's ability to buy product

from Shore, defendant instead requested, and the trial court granted, further declaratory relief determining the parties' rights under that judgment. Plaintiff has not explained, and we fail to see, how defendant used ORS 28.080 in lieu of a well-established means of review of the general judgment.

In sum, in view of the trial court's findings concerning the parties' business disputes, the supplemental relief was both necessary and proper to effectuate the judgment. Accordingly, we hold that the trial court had authority under ORS 28.080 to grant defendant further relief.

B.   *The Trial Court's Construction of the Judgment*

Plaintiff also challenges how the trial court exercised its authority. Plaintiff argues that the trial court misconstrued the judgment when it granted defendant further relief. That argument centers on the court's construction of the term "Perma Treat Products" as defined in the judgment by declaration.

Plaintiff agrees with the trial court that plaintiff had a right to supply defendant and franchisees with a Perma Treat product different from the Shore product. However, as the judgment declared, "Perma Treat Products" were by definition those products that "perform the same function as the products obtained from Shore Corporation in the treatment of hard surfaces." The controversy boils down to the trial court's determinations relating to the "same function" definition in the declaration.

Plaintiff does not take issue with the trial court's general methodology of construing the "Perma Treat Products" definition by considering its text and context to determine what the issuing court intended in the judgment. As context, the trial court considered the judgment as a whole, including the underlying arbitration awards; the parties' purchase and sale agreement; and the evidence concerning the parties' formation of the agreement and their procurement and use of the Shore product.

After reviewing the context, the trial court determined that the phrase "perform the same function" in the judgment meant that the alternative product must be "the

functional equivalent" of the Shore product, meaning that it must perform like or equivalent to the Shore product. The trial court emphasized defendant's role in developing Perma Treat with Shore's chemists and its interest in retaining the ability to obtain that product's functionality in the purchase and sale agreement as contextual factors supporting the court's determination. The trial court observed that the definition of "Perma Treat Product" was specifically tied to Shore products and found that defendant had worked with Shore to develop a product that had certain performance features, such as being food-safe and remaining bonded to the stone or other hard surface despite use of household cleaning products. The court noted that defendant's business was founded on the Shore product and that both parties had been using the Shore product before plaintiff attempted to force defendant to buy Buddyjack's product.

The trial court then found that Buddyjack's product did not "perform the same function" as the Shore product. The court found that, unlike the Shore product, Buddyjack's product was not water-resistant and was not proved to be food-safe for surfaces like kitchen counters. Because the Buddyjack product did not perform like the Shore product, the trial court concluded that defendant was not required to purchase it from plaintiff and could instead exercise its contractual right to purchase the Perma Treat product sold by Shore.

By contrast, plaintiff contends that the phrase "perform the same function" was not tied to specific attributes of Shore products. Instead, plaintiff urges, other aspects of the judgment provide essential context indicating that the "Perma Treat Product" definition was meant to refer to a general class of products that treat hard surfaces, but not stain, that defendant could not sell in competition with plaintiff.

Plaintiff first relies on the arbitrator's determination that defendant had been obtaining and selling numerous similar, competitive labeled products, like "Shore's Best or Stone Shield," which defendant was enjoined from continuing to market. Plaintiff also relies on the declaration in the judgment that "stain" is not a "Perma Treat Product." Plaintiff contends that, given the noncompetition injunction

that incorporates the term "Perma Treat Product" and refers to similar products with different names that treat hard surfaces, the declaration defining "Perma Treat Product" was consistent with the injunction by simply referring to products that seal or treat hard surfaces generally.

Both the trial court's and plaintiff's construction of the judgment's definition of "Perma Treat Products" appear plausible. Thus, as it turns out, that part of the judgment is ambiguous, that is, "capable of more than one reasonable interpretation." *Neal and Neal*, 181 Or App 361, 365, 45 P3d 1011 (2002). However, upon parsing the noncompetition injunction—on which plaintiff heavily relies—and in combination with the other contextual evidence that the trial court considered, we conclude that the trial court's construction of the judgment is the better one.

The injunction not to compete in the general judgment provided that defendant

> "[1] is prohibited from selling Perma Treat Products or any related/equivalent products outside of the Portland Metropolitan Area, [2] is precluded from selling any related/equivalent products within the Portland Metropolitan Area (including, without limitation [various product names] or any other competitive labeled products), and [3] selling any Perma Treat Products within the Portland Metropolitan Area other than Perma Treat EZ Clean."

The first clause bars defendant from "selling Perma Treat Products or any related/equivalent products" outside of its territory. The second and third clauses cover sales within defendant's territory, barring defendant from "selling any related/equivalent products" and "selling any Perma Treat Products" within the territory "other than Perma Treat EZ Clean." Thus, the injunction treats "Perma Treat Products" as separate from "related or equivalent products" and permits defendant to sell only Perma Treat EZ Clean, the product it had been using before selling the business.

Contrary to plaintiff's view, we conclude that the text of the injunction indicates that "Perma Treat Products" was not intended to be a general term encompassing all products used to seal or treat hard surfaces; otherwise, the term "related/equivalent products" would have been unnecessary.

Instead, like the trial court, we are persuaded that "Perma Treat Products" as defined in the general judgment (products that "perform the same function as the products obtained from Shore Corporation in the treatment of hard surfaces") most likely refers to products that have the specific performance features of the Shore product that defendant had developed and used and was permitted to continue to use and sell under the purchase and sale agreement. As the trial court explained in its detailed opinion, "Shore chemical products are indisputably the foundational chemicals" of defendant's business and both parties recognized the value and centrality of continuing supplies of the Shore product in the purchase and sale agreement, including by repeatedly using terms like "the product" and "the chemical formula used in Perma Treat" and requiring defendant to find a "replacement formula supplier" in the event "the chemical formula" is not available so that the business can "continue as originally planned." As a result, we reject plaintiff's argument that the trial court erred in construing the judgment.

## C.   *The Scope of Relief and Due Process*

We turn to plaintiff's next argument: that the trial court awarded defendant declaratory relief in the supplemental judgment that exceeded the scope of defendant's petition for relief, thereby depriving plaintiff of due process. Defendant's petition contained the following requested declaratory relief:

> "1.   Allows Toma to purchase Perma Treat products from Shore Corporation when neither PTI Nevada nor its purported supplier BuddyJack, LLC are able to supply product to Toma; and

> "2.   That BuddyJack, LLC is not a supplier as contemplated by the parties and further order PTI Nevada to obtain a real supplier and provide the supplier's contact information to Toma so that it can purchase produc[t] directly from the supplier."

Plaintiff asserts that any declaratory relief must be limited to the question of whether defendant had a right to purchase Shore product only if Buddyjack was unable to provide product to defendant. Having reviewed the pleadings, including the petition and defendant's response to plaintiff's

cross-petition, and the transcript, we conclude that plaintiff was on notice of the scope of relief at issue from all the pleadings and that the declaratory relief that the trial court awarded flows from the pleadings and evidence before the court in the multiday show-cause hearing.

Plaintiff early on was put on notice of the kind of evidence defendant had and the scope of relief it wanted. Both pleadings put plaintiff on notice that defendant would assert that Buddyjack was not a "real supplier" of Perma Treat products, that the Buddyjack product was not the equivalent of the Shore product, and that defendant had a right to buy Perma Treat products directly from Shore. The parties also exchanged proposed exhibits before the hearing in an effort to stipulate to their admissibility, and defendant's counsel in an opening statement again presented defendant's theory of the case and an outline of the facts that defendant intended to establish, including that defendant had a right to directly purchase product from Shore, that plaintiff was not providing information about the Buddyjack product to defendant, that defendant's testing established that the Buddyjack product had performance flaws, and that the court should allow defendant "to purchase product from Shore Corporation just as it did before so that it can continue to run its operations as it expected it should be able to do."

Plaintiff's opening statement at the hearing further reveals that it was on notice of defendant's theory and the kind of further relief defendant was seeking. Plaintiff told the court that the general judgment precluded defendant from challenging plaintiff's decision to control the supply of product to defendant and plaintiff's franchisees, that relief allowed under ORS 28.080 was limited to coercive relief to enforce the judgment, and that Buddyjack's product quality, which in fact was superior to that of the Shore product, had nothing to do with the issues before the court. We reject the suggestion that plaintiff was misled by the pleadings.[4]

_____

[4] For the same reasons, we reject plaintiff's additional contention that the show cause hearing addressed product quality issues that plaintiff was unprepared to meet. Moreover, as defendant notes, although the show cause hearing was held over multiple days with a lengthy break between the first day and

The pleadings and both parties' statements to the trial court established that defendant's right under the judgment to purchase product directly from Shore under the circumstances was the overarching controversy that the parties asked the court to resolve. Our review of the record reveals that the trial court focused on that issue, and it crafted declaratory relief addressing the subsidiary issues that the parties had disputed at trial, which should not have been surprising to plaintiff. To summarize, those declarations in the supplemental judgment include that defendant may continue to use and purchase Perma Treat products from Shore; the general judgment permits the parties to have multiple suppliers; defendant is not obligated to purchase non-Shore products from a different supplier but may do so when the new product performs the same as Shore products; plaintiff's other products were not equivalent to the Shore products; the parties had to obey rules, regulations, and laws regarding chemicals (which addressed the evidence that plaintiff provided Buddyjack and other chemical products to defendant with mislabeling); plaintiff had been violating the judgment by demanding that defendant use only product supplied by plaintiff rather than by Shore; and Buddyjack was not a commercially reasonable supplier of product to defendant. Accordingly, we reject plaintiff's argument that it was denied due process and affirm the trial court's entry of supplemental declaratory relief in defendant's favor on defendant's petition.

### III.   PLAINTIFF'S CROSS-PETITION

Plaintiff contends in its second assignment of error that it was entitled to obtain supplemental relief under ORS 28.080, because defendant had violated the terms of the judgment and the trademark license agreement. The trial court made findings that defendant had not engaged in acts that violated the parties' trademark license agreement or that constituted competition in violation of the judgment or the purchase and sale agreement, and the court's determinations are supported by evidence in the record. Accordingly, we affirm the trial court's denial of relief on plaintiff's cross-petition.

---

the conclusion of the hearing, plaintiff did not assert that it was surprised and needed additional time to prepare.

## IV.   ATTORNEY FEES

Lastly, we address plaintiff's challenge to the attorney fee award defendant received for successfully defending against plaintiff's cross-petition for supplemental relief. As noted earlier, plaintiff objected to defendant's initial attorney fee request, arguing that the trial court had already ruled that neither party was entitled to fees and that defendant had not complied with the pleading requirement in ORCP 68 C(2)(a) or addressed factors for an award outlined in ORS 20.075. The trial court then denied fees based on defendant's failure to plead a basis for fees. *See* ORCP 68 C(2)(a) (stating that a party seeking fees "shall allege the facts, statute, or rule that provides a basis for the award of fees in a pleading filed by that party"). But, thereafter, defendant sought and obtained leave of the court to amend its pleading pursuant to ORCP 23 A so that defendant finally pleaded the basis for a fee award, and the court awarded fees to defendant.[5]

The viability of plaintiff's challenge to the fee award ultimately turns on whether the trial court abused its discretion in allowing the post-hearing pleading amendment under ORCP 23 A. *See C.O. Homes, LLC v. Cleveland*, 366 Or 207, 215, 460 P3d 494 (2020) (stating that appellate courts review a trial court's decision to grant or to deny a request for leave to amend a pleading for abuse of discretion). However, appellate courts review any underlying legal determination on which the trial court bases its ruling for legal error. *Clark v. University of Oregon*, 319 Or App 712, 722, 512 P3d 457, *rev den*, 370 Or 471 (2022). We conclude that the trial court did not abuse its discretion.

As the Supreme Court has explained, "the gravamen" of the assessment of a motion made under ORCP 23 A is whether the proposed amendment "would unduly prejudice the opposing party." *C.O. Homes*, 366 Or at 216; *see also Eklof v. Persson*, 369 Or 531, 538, 508 P3d 468 (2022) (quoting *C.O. Homes* and noting that the parties agreed that the "key inquiry" for exercising discretion under ORCP 23 A

---

[5] By amendments, defendant ultimately cited paragraph 7.6 of the trademark licensing agreement as the source of its right to fees. That paragraph provides: "Should any legal or equitable proceeding commence for purposes of construing or enforcing this Agreement, the prevailing Party in such action shall be entitled to all of its costs and reasonable attorneys' fees ∗∗∗."

"is the extent of prejudice to the adverse party"). In assessing a motion for leave to amend a pleading, a trial court can consider "the record in the case before it and the procedural posture of the case at the time the motion is made." *Eklof*, 369 Or at 546.

In this case, the trial court concluded that defendant's late amendment was understandably frustrating but not prejudicial to plaintiff. The trial court observed that plaintiff itself had alleged a right to its fees by pleading the "prevailing party" contractual provision that defendant later cited as the basis for its fees, and so plaintiff was not surprised about the provision's existence. The court also found that plaintiff had admitted that the case "would not settle" and that plaintiff had "not identified any evidence, argument, or action it may have offered or made if [defendant] had mentioned a claim to fees under the same contract" that plaintiff had relied on. Citing *Safeport, Inc. v. Equipment Roundup & Mfg.*, 184 Or App 690, 60 P3d 1076 (2002), *rev den*, 335 Or 255 (2003), and *Htaike v. Sein*, 269 Or App 284, 344 P3d 527, *rev den*, 357 Or 595 (2015), the court rejected plaintiff's claim of prejudice as vague and unsupported.

Plaintiff does not contend that the trial court got the facts wrong. Instead, plaintiff appears to argue that the amendment was unfair to plaintiff by virtue of its timing alone, because the requirement in ORCP 68 C(2)(a) that a party state the basis for an attorney fee award in its pleading ensures that the opposing party will have notice and can make strategic decisions accordingly. Citing *C.O. Homes*, plaintiff contends that it suffered prejudice, because the amendment exposed plaintiff at the last minute to attorney fee liability that defendant had never raised (and never intended to raise) during the litigation, thereby altering the stakes of plaintiff's decision to pursue its cross-petition. However, *C.O. Homes* does not support plaintiff's apparent argument that any proposed pleading amendment that comes after a decision on the merits necessarily creates prejudice for the adverse party.

In *C.O. Homes*, the defendant tenant appealed the trial court's decision allowing the plaintiff landlord to amend its petition to evict the tenant and recover possession of a rental

unit after the tenant had answered the petition and denied that the landlord was entitled to possession. 366 Or at 212-14. The trial court allowed the amendment on the day of trial. *Id.* at 213. Through the amendment, the landlord switched the alleged basis for the eviction to one that was more promising than the basis in the original petition. *Id.* at 213-14. The tenant argued that she was prejudiced for two reasons: she needed more time to develop her defense to the newly alleged basis for eviction and, unlike the landlord's original basis for eviction, that new basis could expose her to liability for the landlord's attorney fees. *Id.* at 220-21. The Supreme Court concluded that the tenant was prejudiced by the amended petition, but not based on timing alone. The court observed that the tenant explained that "she could have prepared successful defenses" if she had been given more time, *id.*, and that, under Oregon's landlord and tenant laws, once the tenant filed an answer, "she exposed herself to a potential award of attorney fees" and would be unable to "reevaluate whether to contest landlord's claim and thereby avoid that exposure" to the landlord's attorney fees should it prevail on the new basis for eviction. *Id.* at 221. In other words, the tenant established that she had made a strategic decision to contest the eviction when she determined that she would likely prevail on the landlord's original basis for eviction and therefore would be awarded her own attorney fees, but after the amendment she could not escape potential liability for the landlord's fees should the landlord prevail on its newly asserted basis for eviction. Here, by contrast, as the trial court found, plaintiff did not point to any decisions it had made that banked on defendant's decision not to assert a right to attorney fees for prevailing against plaintiff's cross-petition.

Moreover, in *Htaike*, this court rejected a *per se* prejudice argument similar to the one plaintiff asserts here. In that case, we described the adverse parties' argument this way:

> "[D]efendants essentially assert that prejudice is established any time that the trial court allows a party to amend a pleading to assert a right to attorney fees after trial, but before final judgment, because that party 'might have' made settlement offers if it had known that it might be subject to an attorney fee award."

269 Or App at 300. In refusing to adopt that rule, we held that, for purposes of analyzing a ruling on a motion for leave to amend a pleading, prejudice does not exist "simply as a matter of law." *Id.* at 301. We affirmed the trial court's post-trial allowance of an amendment to allege a contractual basis for fees, concluding that the adverse party's "blanket statement that they 'might have' made settlement offers" if attorney fees had been pleaded initially "is not, in and of itself, enough to establish prejudice." *Id.*

To the same effect is our subsequent decision in *Kaste v. Land O'Lakes Purina Feed, LLC*, 284 Or App 233, 392 P3d 805, *rev den*, 361 Or 671 (2017). Citing *Htaike*, we concluded, "on this record," that the trial court had acted within its discretion in allowing the plaintiffs to amend their complaint during trial to assert a contractual right to attorney fees and rejected the adverse party's argument that it was prejudiced because the delayed assertion of a right to fees "interfered with its ability to resolve fee issues before trial by settlement or otherwise." *Id.* at 250. Thus, in this case and on this record, we conclude that the trial court did not abuse its discretion in allowing defendant to amend its pleading under ORCP 23 A to assert a right to fees.

Supplemental judgment affirmed.